OF THE

# STATE OF MISSOURI,

AT THE

## OCTOBER TERM, 1891.

*(Continued from Volume 108.)*

SWEET, *Appellant,* v. OWENS *et al.*

DIVISION TWO.

1. **Equity**: REFORMING DEED FOR MISDESCRIPTION. A description in a deed will be reformed for mistake only where the evidence is most clear and convincing.

2. **Evidence**: ATTORNEY: CONFIDENTIAL COMMUNICATIONS. Communications to an attorney employed to draw a will concerning the amount of land which the testator intended to convey by a deed already executed are confidential, and, hence, not admissible in an action to reform the deed after the testator's death on the ground of mistake.

3. ———: REFORMING DEED. Where one conveys land to his daughter, and after his death she sues to have the deed reformed for mistake as to the amount of land conveyed, and offers evidence to show that she had advanced money to her father and that the loan was the consideration for the deed, it is competent to show that her demands had been probated and paid.

| | |
|---|---|
| 109 | 1 |
| 121 | 362 |
| 109 | 1 |
| 127 | 264 |
| 109 | 1 |
| 139 | 410 |
| 109 | 1 |
| 142 | 627 |
| 109 | 1 |
| 145 | 636 |
| 148 | 92 |
| 150 | 667 |
| 109 | 1 |
| 168 | ¹98 |
| 168 | ¹99 |
| 109 | 1 |
| 175 | ¹454 |

Sweet v. Owens.

*Appeal from Jasper Circuit Court.*—HON. M. G. MCGREGOR, Judge.

AFFIRMED.

*E. O. Brown* for appellant.

(1) Plaintiff was entitled to have the mistake in the description in the deed corrected. Equity will correct a mistake whether as to fact or law, made by the draftsman of a conveyance, or other instrument, which does not fulfill, or which violates, the manifest intentions of the parties to the agreement. Where, by mistake, a deed is not what parties intended, or there is a mistake in it, and the mistake is made out by satisfactory evidence, or is admitted by the other side, or is evident from the nature of the case, or from the rest of the deed, equity will rectify the mistake. So equity will relieve against mistakes of law, in drawing an instrument, so as to make it conform to the plain intentions of the parties. Lawson's Rights, Remedies & Practice, secs. 2306, 2339; Pomeroy's Equity Jurisprudence, secs. 845, 851; *Davis v. Briscoe*, 81 Mo. 27; *Hook, Adm'r, v. Craighead*, 32 Mo. 405; *Evants v. Strode*, 11 Ohio, 480; *Deford v. Mercer*, 24 Iowa, 118; Leake on Contracts, 319; *Chapman v. Allen*, 1 Am. Dec. 24; *Walker v. Dunlap*, 9 Am. Dec. 787; *Rogers v. Collier*, 33 Am. Dec. 153; *Chamberlain v. Thompson*, 10 Conn. 243; *Smith v. Allen*, 1 N. J. Eq. 43; *Waterman v. Dutton*, 6 Wis. 265; *Paine v. Upton*, 87 N. Y. 327. (2) The court below committed manifest error in permitting defendants to read, in evidence, over plaintiff's objection, the probate court records showing first and final settlements of the estate of Jeremiah Stout, deceased, and a copy of the will made in 1884. (3) The court erred in excluding the testimony of E. R.

Wheeler, as to the declarations made to him by Mr. Stout, in April, 1884, at the time the last will was executed, to the effect that the deceased had just conveyed the "home place," land in controversy, to Elizabeth A., and giving that as a reason why he desired to make another will, omitting any mention of said land in the last will, such evidence being a statement of facts and not communications made in professional confidence. The rule extends only to declarations made to counsel, in order to solicit professional advice. *Dikeman v. Arnold*, 44 N. W. Rep. (Mich.) 407; *House v. House*, 27 N. W. Rep. 858; *McCarty's Will*, 8 N. Y. S. 578; *Bruce v. Osgood*, 14 N. E. Rep. (Ind.) 563. The question of privileged communication does not arise to exclude his testimony, there can be no privilege where the communication is not made by a client confidentially to obtain advice. *Cady v. Walker*, 28 N. W. Rep. 865.

*T. B. Haughawout* for respondents.

(1) The circuit court committed no error in refusing to correct the deed as asked in appellant's bill. Before a court of equity will lend its aid to correct a mistake in a deed, the evidence must be clear, conclusive and of such a character as to be equivalent to an admission by the opposing party. 1 Story's Equity Jurisprudence [12 Ed.] sec. 156. (2) This was a voluntary deed, no consideration having passed at the time. And a court of equity will not correct a mistake in a voluntary deed. 2 Story's Equity Jurisprudence, sec. 164. (3) Appellant failed to prove the allegation in the petition that the deed was made from Jeremiah Stout to Elizabeth A., for a valuable consideration. Witness Tower testified that no money passed, while Mrs. Bradbury, one of appellant's witnesses, testified

that Elizabeth A. was working for her father (Stout) for the board and clothes of herself and daughter. (4) The records of the probate court were admissible to show that Elizabeth A. had the note for $500 given by Stout, deceased, to her, probated, thus showing that she did not let said Stout have the money for the land in question. (5) There can be no question as to the intention of Jeremiah Stout to only convey an undivided one-third interest in the land in question to Elizabeth A., as the deed recites in two different places "the undivided one-third," and furthermore in said deed said Elizabeth A. is absolutely restricted in conveying her interest during the life of said Stout without him joining.

GANTT, P. J.—This is a suit in equity begun in the circuit court of Jasper county by Elizabeth A. Sweet, formerly Hauts, to correct an alleged mistake in a deed to certain lands in that county, by Jeremiah Stout, now deceased, to said Elizabeth Sweet, on the third day of April, 1884. Since this appeal was taken Mrs. Sweet has died, and Mamie Koontz, the sole heir of Mrs. Sweet, has been substituted as appellant herein.

The defendants, Frances M. Owens and her husband, David D. Owens, Frances Folger and her husband, Anson Folger, William Stout and George Stout appearing by their attorneys answered, denying the alleged mistake in the description of said real estate, and, for further defense, alleged that Jeremiah E. Stout, at the time of making said deed, was mentally incapacitated from transacting business, and that the said Elizabeth A. had obtained the deed in question by the exercise of an undue influence over him. The reply to the separate answer of Frances M. Owens *et al.* was a general denial as to the new matter therein contained. The defendant, Mary M. Records, filed her

answer, consenting that the deed might be corrected and reformed as prayed in the petition, and the defendants, Susan K. and H. E. Bradbury, also filed a like answer consenting that judgment be rendered, correcting and reforming said deed; the defendant, Sarah C. Hite, and her husband, Orin Hite, although duly served with process, made default.

The case was tried before the court in November, 1889, and resulted in a judgment divesting title from Mary M. Records, and Susan K. Bradbury to said real estate, and investing same in said Elizabeth A., and a dismissal of the bill as to the other defendants; from which judgment Elizabeth A. appealed to this court.

The evidence shows that Jeremiah Stout was a German. He removed to Jasper county in 1869. His brother-in-law Hannawalt, and his son-in-law Owens and he purchased eighty acres of land together, and afterwards divided it. In time he became the owner of Hannawalt's share also; and this gave him forty-nine acres. He afterwards bought fifty-five acres adjoining. The land lies some six or seven miles from Carthage, and is reasonably worth $50 per acre. His wife died about November 1, 1877. At that time the plaintiff was living in Carthage. She was a widow with one child, the present appellant here. She owned a small residence in Carthage and kept boarders for a living. After her mother's death Mrs. Hauts rented her house for some $8 per month, and went to live with her father on the farm.

The evidence tends to show he had the ordinary amount of stock, and provided well for his household. In 1884 he built a new house on the farm, which cost him some $1,200 or $1,500. He mortgaged the fifty-five acres for $800, and the weight of the evidence tends to prove that Mrs. Hauts borrowed $500 on her house and loaned it to her father. In 1884 he made her a deed to

an undivided one-third of the forty-nine acres or "home tract." This deed was acknowledged April 3, 1884, and recorded May 5, 1884. Two years later the old gentleman died at the advanced age of eighty years. His estate was finally settled May, 1888. He left a will of date April 5, 1884, which was duly probated, which is as follows: *First,* to Mrs. Hauts he bequeathed his single buggy and harness and his bay mare and a cow; *second,* to his grandson, George Stout, $300; *third,* the remainder of his estate to be divided between his heirs, share and share alike, making the heirs of his deceased son, Christian Stout, share the same interest that he would be entitled to if living, except that he willed that his daughter, Sarah K. Bradbury, have $250 less than the other heirs, and that his daughter, Elizabeth Hauts, take only the property hereinabove described.

The parol evidence on the part of plaintiff tended to show that Jeremiah Stout directed the scrivener Tower to convey the whole of the "home tract" to Mrs. Hauts, and that he had made declarations to the various witnesses that he had given her the forty-nine acres.

Plaintiff also offered to prove by E. R. Wheeler, an attorney at law, that, on the day he drew the last will of Jeremiah Stout in the spring or summer of 1884, said Stout stated to said witness Weeeler, "that he had conveyed the home place to Mrs. Hauts, that she had loaned him money, *and he conveyed her this place to secure her for the money so borrowed.*" This evidence was excluded, and plaintiff duly excepted.

The evidence for defendants tended as strongly to prove that the old gentleman had said that Tower had endeavored to get him to convey all of the home place to his daughter, Mrs. Hauts, but he refused. The evidence also showed that Mrs. Hauts had her debt of $500 probated against her father's estate, and with this

allowance, and other moneys, she had purchased the fifty-five acres. Plaintiff excepted to the action of the court in admitting the will and settlements in evidence.

I. That it is perfectly competent for a court of equity to correct a mistake made in the description of land in a deed, no one will now question. But it is equally clear that the authorities all require that the parol evidence of the mistake must be "most *clear and convincing.*" Courts of equity do not grant the high remedy of reformation upon a probability, nor even upon a *mere* preponderance of evidence, but only a certainty of the error." 1 Story's Equity Jurisprudence, secs. 157–61; Pomeroy's Equity Jurisprudence, sec. 859; *Tesson v. Ins. Co.*, 40 Mo. 33; *State to use v. Frank's Adm'r*, 51 Mo. 98.

II. There was no error in excluding the evidence of Wheeler. The evidence shows that the deceased Stout consulted Wheeler, as his attorney. It was purposed to be a confidential communication made by the client to this attorney. If the communications made by a man to his attorney in the privacy of his office, just on the eve of finally disposing of all his worldly goods, when he must have his property in mind and desires to know the effect of his devises, are admissible, then the rule has little to commend it. The cases to which we are cited by counsel for appellant are those where the communications were made publicly, and were in no sense confidential. The evidence offered is not of that character. "No legal adviser is permitted, whether during or after the termination of his employment as such, unless with his client's express consent, to disclose any communication, oral or documentary, made to him as such legal adviser, by or on behalf of his client, during, in the course and for the purpose of his employment, whether in reference to any matter as to which a dispute has

arisen or otherwise, or to disclose any advice given by him to his client, during, in the course and for the purpose of such employment." Stephens' Digest of Evidence, art. 115; *Cross v. Riggins*, 59 Mo. 335; *Hull v. Lyon*, 27 Mo. 570. Here the attorney was consulted and employed to draw a will which would pass two-thirds of the property in question. The offer is to permit him now to testify to a state of facts which would destroy the practical effect of his own professional work.

III. But there was no error in excluding this offer for another reason. The evidence, if admitted, would only have shown that Jeremiah Stout was mortgaging this farm for the money advanced him by his daughter. The evidence is abundant that the loan, for which said mortgage was to have been given, has been fully satisfied by allowance and payment out of the estate since the old man's death. Such evidence would have no tendency whatever to prove the allegations of the petition. The case made in the petition was an absolute, unconditional deed. This offer was merely to prove a mortgage.

IV. There was no error in admitting the allowance and the settlements. Their purpose was to show that Mrs. Hauts proved up all her demands and they were paid out of her father's estate. She had charged and offered evidence that she had advanced her father money; and that her deed was for a valuable consideration. This evidence tended to show that she had been repaid all her money, and this loan was not the consideration of her deed. It seems clear that the deed was a gift, and so intended by the father.

V. The circuit court had all the witnesses before it. The issue was one requiring clear, strong, cogent and convincing evidence. We do not think the facts will justify this court in interfering with its finding. The very character of the description, the use of the

words "undivided one-third" twice in the same convey-ance, was significant. It does not bear the ear marks of a carelessly drawn conveyance. Tower did not take the precaution to ask how many acres the father was conveying to his daughter. His memory now is that he desired to convey *the whole* of the "home tract." It is very strange that an experienced conveyancer encountering the expression "undivided third" twice never once asked himself or the old man, whether this *"undivided third"* included *the whole.*

This deed was put to record at once. It remained two years, and during the remainder of the father's life, unquestioned. He remained the ostensible owner of the whole tract.

Upon the whole case, we think the proof ought to have been very strong to change this conveyance. The learned judge was justified in finding that there was not sufficient evidence to overturn this conveyance. Deeds executed with all the formality of the law and placed of record ought not to be disturbed for slight or unsatisfactory reasons.

The judgment is affirmed.    All concur.