# SUPREME COURT

### OF THE

## STATE OF MISSOURI

---

### APRIL TERM, 1919.

---

*(Continued from Vol. 278.)*

---

## JOHN P. ORRIS, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY.

### In Banc, June 25, 1919.

1. **INSTRUCTION: Not to Consider Character of Injury: Misleading.** In a case in which the character of the injury is a material link in the chain of circumstances tending to show negligence, an instruction which declares "the court instructs you that the mere fact that plaintiff was injured while employed by defendant is of itself no evidence whatever of defendant's negligence or liability, and there can be no recovery by the plaintiff unless the plaintiff has by a preponderance of the creditable evidence in the case established negligence on the part of the defendant, as described in other instructions herein," is misleading and harmful, in that it authorizes the jury to disregard the character of plaintiff's injury, and to conclude that "the creditable evidence" means evidence other than evidence as to the injury and character of the injury.

   *Held*, by BOND, C. J., dissenting, that injury does not of itself warrant an inference of negligence in cases in which the doctrine of *res ipsa loquitur* has no application.

1

1—279 Mo.

2. ———: **Limiting Evidence to Circumstantial Evidence.** Where all the evidence pertaining to the particular issue submitted by the instruction is circumstantial, a statement therein that plaintiff seeks to prove such issue by circumstantial evidence is not error; but if there is positive and direct evidence on that particular issue an instruction restricting the proof to circumstantial evidence would be misleading.

3. ———: **Assumption of Fact.** An instruction should not assume the existence of a disputed fact. Even when there is ample evidence from which the jury may find that the tool furnished the employee was in usual and ordinary repair, that fact does not justify an assumption in the instruction that the tool was in usual and ordinary repair.

4. ———: **Conflicting: Omitting Element of Negligence: Safe Condition.** An instruction which directs a verdict for defendant if the spark-arrester of the engine on which plaintiff was fireman was in good condition, conflicts with one given for plaintiff which requires the flues also to be in good condition, the petition having charged that the injury to his eye by a burning cinder was due to a combination of defects in the flues and the spark-arrester. There being positive evidence that the flues were stopped up, and that their defective condition might have caused the injury even if the spark-arrester was in good condition, an instruction which omits all reference to the flues and directs a verdict for defendant if the spark-arrester was in good condition is error.

5. **EVIDENCE: Proof of Reputation for Truth: No Attack: Contradictory Statements.** Where there is no direct impeachment of a witness, that is, where no attempt is made to show that his reputation for truth and veracity is bad, evidence showing that his reputation is good is not admissible. Although he has made contradictory statements, either out of court, or in a former deposition, or upon a severe cross-examination at the trial, those things go to his credibility and not to his general reputation, and evidence to show his reputation for truth and veracity to be good is not admissible. [Disapproving a contrary rule announced in Miller v. Railroad, 5 Mo. App. l. c. 481; Walker v. Insurance Co., 62 Mo. App. l. c. 220, and other cases decided by the Courts of Appeals.]

Appeal from Grundy Circuit Court.—*Hon. George W. Wanamaker,* Judge.

REVERSED AND REMANDED.

*Platt Hubbell* and *Geo. H. Hubbell* for appellant.

(1) The defendant's instruction numbered 1 is erroneous in that said instruction tells the jury that the

injury to plaintiff's eye is no evidence whatever of
negligence. The nature and character of the injury,
the manner in which the injury was received and the
facts surrounding the injury are evidence for plaintiff
tending to show negligence on the part of the defendant,
and the court erred in withdrawing this evidence from
the consideration of the jury by this instruction. Walker
v. Railroad Co., 178 S. W. 110; 2 Thomp. Neg. sec.
2293; Texarkana Ry. Co. v. O'Kelleher, 21 Tex. Civ.
App. 96; Myers v. City of Independence, 189 S. W.
823; Railway Co. v. Howard, 124 Ark. 588; Flannery
v. Railway Co., 44 Mo. App. 400; Melican v. Electric
Co., 90 Mo. App. 599, 602; Peeler v. McMillan, 91 Mo.
App. 316. (2) Defendant's instruction numbered 2 is
erroneous in that said instruction places the test of
negligence as "when in usual and ordinary repair . . .
under such circumstances" regardless of whether due
care was exercised in keeping the netting in proper re-
pair, and allowed the defendant to set up its own stand-
ard of reasonable care; and, said instruction concludes
with a comment on the effect and weight of the evidence,
in the nature of an argument on behalf of defendant;
and, this instruction assumes the exercise of ordinary
care on the part of the defendant. Railway Co. v.
Proffitt, 36 Sup. Ct. Rep. 622; Frazier v. Smelting &
Refining Co., 150 Mo. App. 430; Flannery v. Railway
Co., 44 Mo. App. 400. (3) The defendant's instruction
numbered 3 is erroneous in that said instruction arbi-
trarily classes all of plaintiff's evidence as circumstan-
tial evidence and contains the erroneous and misleading
abstract direction to the jury, to-wit: "it devolves upon
the plaintiff to prove to your reasonable satisfaction
that each one of the circumstances has been established
by the evidence." Bryce v. Railway Co., 129 Iowa, 342;
38 Cyc. 1739; State ex rel. Fire & Marine Ins. Co. v.
Ellison, 187 S. W. 23; Railway Co. v. Watson, 190 U.
S. 287, 47 L. Ed. 1057; Schmidt v. Dubuque County,
136 Iowa, 403; Jackson v. Railroad Co., 31 Iowa, 355;
St. Louis Railway Co. v. Brothers, 165 S. W. 488; 3

Ency. Ev. 63, 64, 65; 2 Thomp. Neg. secs. 2260, 2291, 2293. There is direct evidence of negligence against defendant, in addition to circumstantial evidence. (4) The defendant's instruction numbered 4 is erroneous in that said instruction assumes that the alleged inspection on the part of the defendant was in the exercise of reasonable and due care, and said instruction submits to the jury the issue of the netting suddenly becoming out of repair after the departure of the engine from Trenton, and before it reached the point where plaintiff was injured, while there is no evidence upon which to base such an instruction and said instruction permitted the jury to wander into conjecture when such a possibility was not even suggested in the course of the trial. And, said instruction singles out the defendant's evidence of inspection and makes an unwarranted comment thereon. Holden v. Mo. Pac. Ry. Co., 177 Mo. 469; McKeon v. Railway Co., 42 Mo. 84; Scholthauer v. Railway Co., 89 Mo. App. 72; Meyer v. Railroad, 45 Mo. 138. (5) The defendant's instruction numbered 5 is erroneous because it is an argument on the part of defendant, and is an abstract proposition tending only to mislead and misguide the jury. 3 Elliott on Railroads, sec. 1245b; Louisville Ry. Co. v. Sullivan Timber Co., 138 Ala. 379; Coleman v. Railway Co., 36 Mo. App. 491. Plaintiff offered to prove and introduce evidence showing his good reputation. Defendant had offered evidence of alleged contradictory statements out of court, which entitle the plaintiff to this evidence. Miller v. Railroad, 5 Mo. App. 481; Walker v. Ins. Co., 62 Mo. App. 220; Browning v. Railroad, 118 Mo. App. 451; Berryman v. Cox, 73 Mo. App. 74; Landers v. Railroad, 134 Mo. App. 89; Gourley v. Callahan, 176 S. W. 239, 190 Mo. App. 666; Ross v. Grand Pants Co., 170 Mo. App. 291; Texas Cent. Ry. Co. v. Weidman, 62 S. W. 810; 30 Am. & Eng. Ency. Law (2 Ed.), p. 1150; Alkire Grocer Co. v. Tagart, 78 Mo. App. 166.

*Paul E. Walker* and *A. G. Knight* for respondent.

(1) Defendant's instruction No. 1, given by the court, was accurate, and enunciates a correct principle of law. Blanton v. Dold, 109 Mo. 74; McFern v. Gardner, 121 Mo. App. 6; Warner v. Railroad, 178 Mo. 133; Burns v. Railroad, 176 Mo. App. 338. (2) The criticism of defendant's instruction numbered 2 is without merit. This instruction simply told the jury that plaintiff assumed the risk from cinders getting in his eyes, such as usually and ordinarily escaped through the mesh of the netting in use on the engine at the time of plaintiff's injury, when in usual and ordinary repair. The mesh of the netting—three-sixteenths of an inch— was admitted on all sides to be standard; the netting was admitted to be the standard kind in use by all roads; the only question was, whether it was out of repair by having had holes larger than three-sixteenths of an inch, either burnt or worn in it. Miles v. Coal & Coke Co., 172 Mo. App. 239, 240. (3) The objection to a portion of defendant's fourth instruction is not well taken. The plaintiff's criticism states that this instruction permitted the jury to wander into conjecture. The only question of "conjecture" is, whether the netting ever became out of repair, and we frankly concede there was no proven fact on which to base such a conclusion, but the mere "conjecture" or "guess" of the plaintiff as to the size of the flying cinder, but this "guess" was resolved in his favor by the court, and disbelieved by the jury, and he cannot complain. Krampe v. Brewing Association, 59 Mo. App. 281; Redmond v. Railroad, 225 Mo. 739; Howard v. Railroad, 173 Mo. 524; Bennett v. Lumber Co., 116 Mo. App. 699; Kelley v. C. & A. Railroad, 105 Mo. App. 365; Hach v. Railroad, 117 Mo. App. 11. (4) As to what amount of impeachment or what amount of cross-examining, or what amount of contradicting a witness, will allow of reinstatement of such witness by character proof, has been the subject of much discord in this State, as a reference to the opin-

ions and dissenting opinions will show. But, an examination of the cases on this subject in this State will show that at least the witness's character must have been assailed, by imputing criminal conduct or moral turpitude, or impeachment of the witness's general character, in order to admit of such sustaining evidence, as distinguished from a mere contradiction, or an intimation of the want of credence in his story, or of intense interest or zeal, or the lack of recollection, or want of candor or frankness, or other of the many incidents of cross-examination. Fulkerson v. Murdock, 53 Mo. App. 151, 123 Mo. 292; Gourley v. Callahan, 190 Mo. App. 670; Ross v. Grand Pants Co., 170 Mo. App. 293.

GRAVES, J.—Whilst in the service of the defendant as fireman upon an interstate train, the plaintiff lost his left eye by reason of a burning or hot cinder escaping from defendant's engine. Plaintiff says the defendant was negligent in furnishing to him and his crew an engine which was out of repair, and that his injury was the result of such negligence.

The action is one under the Federal Act. He states the alleged negligence of the defendant thus:

"Said engine was defective in that some of the flues of said engine permitted water to leak onto the flue-sheet from the boiler of said engine, and in that some of the flues of said engine were stopped up, honeycombed with impurities and chemicals from the coal and parts of the coal and cinders, and some of said flues were stopped and filled with a mixture of cinders and coal formation, which prevented said flues from performing their proper function and which prevented the passage of smoke and flame through them; and said condition of the aforesaid flues was caused by the negligence of the defendant; and said condition of said flues required the other and remaining flues of said engine to do the work of those which were so stopped up and filled, and caused said remaining flues, which

were open, to draw abnormally and unreasonably on the fire of said engine, and caused said remaining and open flues to pull ignited particles of coal and pieces of slack through said open and remaining flues, before said ignited pieces of coal and slack had been thoroughly burned and while the same were afire and alive and burning and caused said ignited pieces of coal and pieces of slack to escape from the smoke-stack of said engine as live cinders, burning and afire; and said engine was defective in its smoke-box netting and defective in its diaphragm and its deflector plate and defective in its other apparatus and equipment for the prevention of the escape of burning and live cinders from its smoke-stack; and said engine was defective in its steam valves, and said steam valves on both sides permitted steam to escape up the smoke-stack without going into the cylinders of said engine, and said escaping steam contributed to the passage of live and burning cinders and live and burning pieces of coal and slack up and through the smoke-stack of said engine; and said engine, by reason of the aforesaid defects, and by reason of other defects now unknown to the plaintiff, threw an unusual, unreasonable and extraordinary amount and quantity of burning coal, burning and live pieces of slack, and burning and hot cinders from its smoke-stack; and in its running and progress on the aforesaid date, said engine emitted and threw out large quantities and amounts of burning and flaming pieces of coal and slack; and, said engine then and there was not in a reasonably safe condition to be run and operated on said trip over the defendant's said track.

"The aforesaid defective condition and defects of said engine were then and there well known to the defendant, and the defendant might have known of the same by the exercise of reasonable care and diligence.

"The defendant, by the means and in the manner aforesaid, then and there and thereby negligently failed to furnish the plaintiff and his crew with a reasonably

safe locomotive engine; and the defendant then and there and thereby negligently required the plaintiff and his crew to work with a locomotive engine which was not reasonably safe.''

In its answer the defendant admitted its corporate capacity and that it was a common carrier of both passengers and freight for hire. Its further answer was (1) a general denial, (2) assumption of risk, and (3) contributory negligence. The reply was in conventional form. In the trial *nisi* the defendant had a verdict and judgment, from which the plaintiff has appealed.

As fireman on Engine No. 2028, the plaintiff left Trenton, Missouri, for Horton, Kansas, a distance of 120 miles. There is no question of the interstate character of the train which was pulled by this engine on January 31, 1914, the date of the injury. This train left Trenton early in the morning and reached Horton about five or six o'clock in the afternoon. At Jamesport Hill (something near ten miles from Trenton) plaintiff, in the performance of his duties, leaned out of the cab window to look for a semaphore, which would indicate ''a block'' of the road, by some other train, which train was then expected. Whilst so doing he was struck in the left eye by a hot cinder from the smock-stack of the engine, and from the injury received to this eye, it had to be removed in a very short time thereafter, and plaintiff thereby rendered unfit for further railroad service. Plaintiff says that he saw the cinder just as it struck him, and saw a portion of it as it fell off, and glanced toward the ground. He says that he knows that it was larger than a pea, and in more than one place says that in his judgment it was more than a quarter of an inch through—from a quarter of an inch to three-quarters of an inch, is his positive evidence in more than one place in the record.

Engine No. 2028 was called an engine of the 2000-class. At the rear was a fire-box, where the firing was done, and in which would be gas, flame, smoke, cinders,

coal and fire. From a flue sheet in this fire-box in the rear ran 340 flues, 2 inches in diameter, 6 inches in circumference, and 15 feet long, to a flue sheet in the "smoke box" in the front of the engine. The exhaust of steam by the engine creates a vacuum in this "smoke box," and the suction draws the gas, smoke, and cinders through these flues from the fire box to the smoke box. The cinders (coming through these flues and as they reach the smoke box) strike a deflective plate and by suction are drawn toward the front of the smoke box up through a netting or spark arrester, and are then expelled through the smoke-stack. This wire netting is of a three-sixteenth inch mesh, but it is so arranged that the cinders do not strike it at right angles. It is slanted so that the cinders strike it at a different angle, and the experts in the case say that owing to the slant of this wire netting (if the netting is sound and not burned out or broken) the cinder which passes through would have to be less than three-sixteenths of an inch in diameter. These experts say that with a sound netting or spark arrester the cinders passing through would be of the size of a pin head to a grain of wheat.

Plaintiff testified that about one-fourth of the 340 flues in this engine were clogged up and not working, and he and other experts say that the effect of this would be to have the other flues draw harder, and thereby draw larger burning cinders from the fire box to the smoke box, which larger and hotter cinders might accumulate on this cinder screen or spark arrester and burn it out.

They say that the remaining flues have to draw harder, because the vacuum which is to be filled, is the same, and the flues to fill it are less in number. The evidence of the experienced men fix the size of the largest cinder which can pass through a perfect or sound spark arrester at the size of a grain of wheat. Plaintiff himself was a man of long experience with an

engine, but this evidence comes from others of equal experience, and disinterested in the case.

Plaintiff testifies to the size of the cinder which struck him, and says that a cinder of that size could not have passed through the mesh of an arrester as used upon that class of engine, if the arrester had been in good condition. Defendant's evidence tended to prove that the engine had been inspected both before and after the trip made by plaintiff (upon which trip he was injured) and that the flues and spark arrester were in good condition. Further details will be left for the opinion. The assigned errors here go to the giving of sundry instructions for the defendant, and the exclusion of certain evidence offered by the plaintiff.

I. The plaintiff says that there was error committed by the court in giving for defendant its instruction numbered 1, which reads:

"The court instructs you that the mere fact that plaintiff was injured while employed by defendant, and the fact that he has sued to recover damages therefor, are of themselves no evidence whatever of the defendant's negligence or liability in this case, and there can be no recovery by the plaintiff in this case, unless the plaintiff has, by a preponderance of the credible evidence in the case, established negligence on the part of the defendant, as described in other instructions herein."

We think this instruction misleading and harmful in this case. Let us shorten the instructions so that its view may more fully appear. Thus shortened it reads: "The court instructs you that the mere fact that plaintiff was injured while employed by defendant . . . *is of itself* no evidence whatever of the defendant's negligence or liability in this case, and there can be no recovery by the plaintiff in this case, unless the plaintiff has by a preponderance of the creditable evidence in the case established negligence on the part of defendant, as described in other instructions herein."

From this instruction the jury could well draw the conclusion that they should not consider the injury to plaintiff in determining the matter of defendant's negligence. They could well draw the conclusion that they should not consider the character of injury to plaintiff in determining the matter of defendant's negligence. They could well conclude that "the credible evidence" used in the latter part of the instruction meant evidence other than evidence as to the injury and the character of the injury. In this particular case the character of the injury is a material link in the chain of circumstances tending to show negligence. To make the matter clearer some additional facts in evidence should be stated. There is evidence tending to show that when the netting is in proper shape only small cinders escape through the smoke-stack, and that after night they would look to be alive and "just a minute and they were out: they were fine cinders." The evidence also shows that with some flues not working the suction through the others is greater, and this tends to throw the cinders out of the smoke-stack with more force and velocity. In addition the plaintiff says this particular cinder burned his eye, indicating heat and size.

So taking all the facts, the very character of the injury would be a link in the chain of circumstances tending to prove a defective spark arrester, or negligence. The eye being burned indicates heat in the cinder, as well as size. The small cinders lose their heat more rapidly upon exposure to the air. The large cinder carries its heat or burning power longer and further. So the character of the injury in a case like this, tends to show a larger cinder, and a larger cinder tends to show a defective spark arrester. In cases like this the jury should consider the injury and its character in an effort to determine negligence. This instruction in our judgment is misleading upon this matter.

It is true that the mere fact of injury, standing alone, is no proof of negligence. In Blanton v. Dold, 109 Mo. 1. c. 74, this court said: "The mere fact of an injury to plaintiff does not necessarily create a liability or warrant an inference of defendants' negligence. The burden of proof was on plaintiff to establish, directly or by just inference, some want of care to which his injury might fairly and reasonably be traced."

There is a line of cases to like effect. But these cases do not conflict with the views we have expressed in this case. These cases do not say that the character of the injury inflicted may not be a circumstance tending to show negligence, or a fact from which when coupled with other facts, negligence may not be inferred.

Instruction No. 1 says that the mere fact that plaintiff was injured is no evidence whatever of defendants' negligence. This naturally led the jury to believe that they should not consider the injury in determining negligence in this case. We think the instruction wrong and so rule. The instruction, under the peculiar facts in this case, is but little better than the instruction so forcibly condemned by Brown, C., in Myers v. City of Independence, 189 S. W. 1. c. 823. After setting out the instruction, our learned Commissioner commented thus: "The instruction illustrates that masterly use of language by which even experts are puzzled and juries wait with patience for such explanation as their author can give of the meaning of the terms he has used. It tells them that unless he has proven his case by the greater weight of the testimony they must disregard the fact that he received injuries. In a case in which, according to all authority, the fact that he received injuries cuts so large an evidential figure, it is important that the jury should be plainly instructed whether he must prove his case by the greater weight of evidence before the jury could take into consideration the fact that he was injured, or whether the fact that he was injured by the turning of the current of electricity through his body might be taken into consideration in proving 'his case'

is not explained. A careful reading of this instruction impresses us that the words we have italicized have no logical or grammatical office in it, other than that which lies in the Websterian definition of the word 'injury' as 'an act which damages, harms, or hurts,' or its legal definition, 'an actionable wrong.' In a case of this character where so much depends upon the deduction of fact to be drawn from the occurrence of the injury the vice of such an instruction is especially manifest.''

So we say of this instruction. It is misleading to the utmost. From it the jury could readily conclude that in determining negligence or liability, they should entirely exclude the injury and its peculiar character.

In Walker v. Railroad, 178 S. W. l. c. 109, we had before us this instruction: ''The mere fact, if it be a fact, that plaintiff was injured, does not entitle her to recover in this case, and you should not allow such fact to influence you in arriving at your verdict.'' In that case, like this, the jury had found for the defendant. The foregoing instruction had been given for the defendant. Of this instruction, at p. 110, we said: ''The court instructs the jury at the instance of defendant that they should not allow the fact that the plaintiff was injured to influence them in arriving at their verdict. While we understand that the fact of injury is not alone sufficient to authorize a recovery on the ground of negligence, we do not understand how it is possible for the jury to remain uninfluenced by the existence of a fact, the existence or non-existence of which is the ultimate subject of their injury. The fact that plaintiff was permitted to fall to the ground is the negligence charged. Negligence is predicated upon the fact, which the jury must find, that the fall is liable to injure her, and they must also find that the injury was the immediate result of letting her fall. There is a refinement somewhere in this instruction which we are unable to grasp, and we think that is sufficient reason for withholding the task from the jury.''

So we say in this case. The task of grasping defendant's Instruction No. 1 should have been withheld from the jury.

II. Complaint is also lodged against Instruction No. 3 given for defendant. This instruction, as far as pertinent, reads:

"You are instructed that there is no evidence in this case that the netting in use on engine 2028 on the occasion of plaintiff's injury was not a proper kind of netting and of sufficient structure and standard-make and the kind in general use on the roads of this country. The only claim of negligence in respect thereto by plaintiff being that such netting had in some way become so out of repair that at the very time and place of plaintiff's alleged injury, it would permit the escape of uncommon and unusually large cinders—larger in size than when netting was not so out of repair, and the plaintiff *on this issue* seeks to establish such facts of such netting being out of repair at the very time and place, as above mentioned, by what is known in law as circumstantial evidence."

*Circumstantial Evidence.*

It is urged that the instruction "arbitrarily classes all of plaintiff's evidence as circumstantial evidence" and is therefore erroneous. In 38 Cyc. 1739, the correct rule is stated thus: "A statement that plaintiff had sought to prove his case by circumstantial evidence is reversible error where it is sustained by direct and positive evidence."

But this instruction only says that the plaintiff undertook to prove a defective screen or spark-arrester by circumstantial evidence. It limits, by language, the question to that one issue. Now as a fact is the statement in the instruction correct? Upon that issue, the thing to be proved was a defective spark-arrester. No one, for plaintiff, testifies that he saw the spark-arrester, or saw defects therein. Plaintiff undertook to show that there were defects in the arrester by showing a state of facts from which the jury could infer that the

arrester was defective. It is true that he proved by experts that a good arrester could not emit cinders larger than a grain of wheat, yet after all, the thing to be proven was defects in the arrester, and in my judgment all the facts proved were only facts from which the inference of defects could be drawn. This makes circumstantial evidence, and we see no error in the instruction. Of course there was direct evidence on the question of the flues being out of condition, but this instruction does not touch that question. The instruction speaks only of the netting and limits what it says to "this issue."

III. Instruction No. 2 for the defendant reads:

"The jury are instructed that by accepting employment as a fireman on the defendant's railroad, the plaintiff assumed all the risks and dangers ordinarily incident to such employment as a fireman, and this included all the risks and dangers from cinders getting in his eyes, such as usually and ordinarily could or would escape through the mesh of the netting in use on the engine at the time of the plaintiff's alleged injuries when in usual and ordinary repair, and for the escaping of cinders through such netting under such circumstances, there can be no recovery by the plaintiff—and this is true, regardless of the condition of said cinders as to being hot or otherwise."

Assumption of Fact.

Much is said about this instruction by learned counsel for the appellant. To our mind the defect in the instruction lies in the fact that it assumes that the defendant had exercised usual and ordinary care in the use of netting of the character used on this engine. The instruction does not leave it to the jury to determine, from the evidence, the fact as to whether or not usual and ordinary care had been exercised by defendant in this regard. There was ample evidence from which the jury could have found that the netting in use upon this engine was such as was generally used by persons in the same line of business, and from this to find that defendant had acted with usual and ordinary

care in using this particular kind of netting, and was therefore not guilty of negligence in using it, whilst in a proper state of repair. Yet this does not always justify the assumption made in this instruction. The only thing which can be said is, that the assumption made in the instruction might be said to be harmless, or perhaps justified, on the theory that there was no .countervailing proof upon the question of the general use of such netting. If this were the only error, we would feel loth to disturb the verdict. It is always best, however, to omit assumption of fact in an instruction.

IV. Instruction No. 4 for defendant reads:

"Unless the plaintiff has satisfied the jury by a preponderance—that is, by the greater weight of the credible evidence in the case—that at the very time and place of his injury, if any, the netting in the front end of Engine 2028 had become so out of repair by use or otherwise, as to allow the passage through the same of unusually large cinders, and larger than those passing through the same when in ordinary repair, the verdict and finding of the jury will be for the defendant. And, in this connection, the jury are told that if they believe and find from the evidence that such netting was inspected in the defendant's shops at Trenton, Missouri, before starting on its trip for Horton, Kansas, and was in reasonable and ordinary repair when so inspected, then even though the jury might believe that at some time after its departure and before reaching the point where plaintiff claims to have received his injury, such netting became suddenly out of repair, such fact would not warrant the jury in finding the defendant negligent and would not therefore authorize a recovery by plaintiff."

It is urged that there is no evidence to show that the netting became suddenly out of repair. There is evidence of an inspection before the engine left Trenton, and it was out of repair before it had run ten miles according to plaintiff's testimony. So that if the in-

spection was a careful one, and the condition reported was the true condition, there is some evidence to justify the clause condemned by plaintiff's counsel.

However, the trouble that we see with this instruction arises from other sources. In the first place, it assumes a reasonably careful inspection by defendant's agents. It should not do that.

But the real poison lies in the fact that it denies a recovery to plaintiff, if the jury should find that the netting was in a good state of repair when the engine left Trenton. This overlooks the fact that negligence was also charged as to the condition of the flues. Plaintiff's Instruction No. 1 covered the condition of the engine (including the condition of the arrester and the flues), and this instruction directs a verdict for defendant if the arrester was in good condition. It clearly conflicts with plaintiffs' Instruction No. 1.

The evidence tended to show that a large per cent of the flues in this engine were stopped up; that this condition of things caused greater suction in the remaining flues; that this greater suction would cause the cinders to be thrown out of the smoke-stack with greater force and rapidity; that the cinders when thrown out by an engine in good condition, usually lost their heat and fire upon reaching the air. In other words, there is evidence tending to show that even with the spark-arrester in good condition, yet the defective flues might have occasioned the injury. This because the eye was burned (according to plaintiff's evidence) and the smaller cinder might have retained its heat, because it was thrown from the smoke-stack with an accelerated speed, by reason of the defective flues. The instruction not only conflicts with plaintiff's instruction, but omits an alleged act of negligence (with evidence to show it) and directs a verdict for the defendant, if the screen was in good repair. This instruction was error.

V.   It is urged that there was error in refusing to permit the plaintiff to show his good reputation for truth and veracity.   There was no direct impeachment of the plaintiff.   By this we mean the defendant did not undertake to show by witnesses that the plaintiff's reputation for truth and veracity was bad.   The most that can be said is that the defendant cross-examined the plaintiff as to a deposition which he had previously given, and as to some signed statements that he had made to a doctor (company doctor) who treated his eye; that the cross-examination was vigorous and tended to reflect upon the veracity of plaintiff; that the statements in the deposition and the other written statement tended to contradict the plaintiff's statement on the witness stand.   There is sufficient to justify the introduction of this evidence of good character, under a long line of cases from our Courts of Appeals.

*Reputation.*

The rule first announced and since followed, is in Miller v. Railroad Co., 5 Mo. App. l. c. 481, whereat the St. Louis Court of Appeals said: "As the case must go back for a retrial, we may say that there is nothing in the objection of appellant to the testimony in support of plaintiff's character.   His character for truth was attacked by defendant, not by direct evidence, but by the character of the cross-examination, and by evidence of statements by him, out of court, different from those sworn to by him on the stand It is now well settled that where this is the case, it is competent for the party calling the witness to give evidence of his general good character.   [1 Greenl. on Ev. sec. 462;   Paine v. Tilden, 20 Vt. 554;   31 N. C. 14;   12 N. Y. 236;   34 Barb. 256.]"

So also has the Kansas City Court of Appeals ruled.   Thus, in the case of Walker v. Insurance Co., 62 Mo. App. l. c. 220, that court says: "The defendant further objects that the court erred in refusing to allow it to introduce proof of the good reputation, for truth and veracity, of its agent, Miller.   His character in this respect was attacked by plaintiff, not by direct

evidence, but by the character of cross-examination and by evidence of statements and reports, etc., made by him out of court, different from those sworn to on the witness stand. 'It is now well settled,' says Judge REDFEILD, in Paine v. Tilden, 20 Vt. 554, 'that, whenever the character of a witness for truth is attacked in any way, it is competent for the party calling him to give general evidence in support of the good character of the witness. And we do not think it important whether the character of the witness is attacked by showing that he has given contradictory accounts of the matter out of court and different from that sworn to, or by cross-examination, or by general evidence of want of character for truth.' And to like effect are the following cases: Miller v. Railroad, 5 Mo. App. 47; State v. Roe, 12 Vt. 93; Isler v. Dewey, 71 N. C. 14. Accordingly it must be ruled that the court erred in rejecting defendant's offer of general evidence of the good character of its agent, Miller, for truth.''

In a number of succeeding opinions this rule is approved: Berryman v. Cox, 73 Mo. App. l. c. 74; Browning v. Railroad, 118 Mo. App. l. c. 451; Landers v. Railroad, 134 Mo. App. l. c. 89; Gourley v. Callahan, 190 Mo. App. 666; Ross v. Grand Pants Co., 170 Mo. App. 291.

The rule adopted by the Court of Appeals has support in the case law. [30 Am. & Eng. Ency. Law, p. 1150.]

However many courts hold it inadmissible. [30 Am. & Eng. Ency. Law, p. 1151.]

In 30 Am. & Eng. Ency. Law, p. 1151, it is said: ''Mere contradictions in the testimony of opposing witnesses, or different versions of the transactions in issue, have been generally held not to involve such an attack on the character of the witnesses as to justify the admission of general evidence of their character for truth; otherwise trials would be rendered interminable, and instead of reaching truth by the verdict, it would be likely to be stifled under a large number of

side issues, calculated to obscure and not to elucidate the real one. The rule has been generally applied, although the contradictions in testimony are of such nature as to consequently impute fraud, immorality, or crime to the witness. Further, under the decisions in some jurisdictions, disapproving the statements of text-writers to the contrary, proof that a witness has made declarations contradictory of his testimony will not warrant the reception of such evidence; nor will the cross-examination of a witness, however severe or searching, unless admissions of extrinsic facts going to his character are wrung from him during its course. Evidence of contradictory statements is an assault on the credit rather than on the character of the witness, and therefore, does not open the way for evidence to sustain his general character.''

On the other hand this court in the early case of Gutzwiller v. Lackman, 23 Mo. l. c. 172, per SCOTT, J., said: ''We do not see on what principle the plaintiff was permitted to introduce evidence · of his good character. The rule is stated in the books, that, as evidence is to be confined to the points in issue, the character of either party can not be inquired into in a civil suit, unless it is put in issue by the nature of the proceeding itself.''

This rule has been consistently followed by this court. [Rogers and Gillis v. Troost's Admr., 51 Mo. l. c. 476; Dudley v. McCluer, 65 Mo. l. c. 243; Vawter v. Hultz, 112 Mo. l. c. 639; Black v. Epstein, 221 Mo. l. c. 305; Bank v. Richmond, 235 Mo. l. c. 542.]

We have also expressly ruled that sharp conflict in the testimony of witnesses will not authorize the introduction of evidence as to good character (State v. Fogg, 206 Mo. l. c. 716), whereat we said: ''It is urged by counsel for appellant that the court committed error in the exclusion of the testimony offered to prove the defendant's reputation in the neighborhood in which he resided for truth and veracity. This testimony was properly excluded for the reason that the

defendant's reputation for truth and veracity had not been assailed, and the mere fact that there was a conflict between his testimony and that of the prosecuting witness, is not in contemplation of law such an attack upon his reputation for truth and veracity as would warrant the court in admitting the testimony as to such reputation, for the purpose of bolstering up the testimony of the defendant, when such reputation had been in no way assailed. As applicable to this proposition we know of no rule of law which makes any distinction between the defendant as a witness and any other witness in the case; therefore we take it that the rule as announced in State v. Thomas, 78 Mo. 327, is decisive of this question."

But the Courts of Appeals seem to think that the general character of a party to a suit has been assailed, when the other side proves that at other times and places such party has made statements contradictory of the statements made on the witness stand, and the party so assailed has the right to show his general reputation for truth and veracity. The rule, as said, has support, and it has non-support in the cases. In 40 Cyc. 2759, it is said: "Some authorities hold that where a witness has been attacked by showing statements inconsistent with his testimony, he may be sustained by evidence of his good character or reputation for truth and veracity; but according to other authorities it is not permissible to sustain the witness in this manner."

It occurs to us that some of the cases overlook a possible difference between things that go to the credibility of the witness, rather than to his general reputation. When you attack his general reputation is one thing, but showing matters which affect the credibility of his statements on the witness stand is quite another and different thing. To show that a witness has made contrary statements out of court goes to the credibility of his evidence, but not necessarily to his general reputation for truth and veracity. There is a distinction

between an attack upon the credibility of a witness's statement in court, and an attack on his general reputation for truth and veracity.

In Chapman v. Cooley, 12 Richardson (S. C.) l. c. 660, it is said: ''Surely, then, character and credit are distinct things, and every assault on the credit of a witness does not involve the imputation of perjury to him, nor, indeed, any reflection on his reputation. If a witness should contradict himself in the course of his testimony, it would not be pretended that this would be a sufficient basis for evidence as to his good character; and yet there is no difference, in principle, between his contradiction of himself on the stand and outside of the court house. The consumption of the limited time which can be appropriated to the administration of justice and of the money of parties and witnesses, required by the trial of collateral issues as to character, is a great and growing mischief.'' See also Bank v. Assurance Co., 33 Ore. l. c. 50 et seq.

So we conclude that neither the proof of mere contradictory statements, nor a rigid cross-examination of the party, will authorize the introduction of evidence as to his general reputation for truth and veracity. Such things go to the credit to be given his testimony rather than to his reputation for truth and veracity. These things do not constitute such an attack upon his general reputation as to admit evidence to support such reputation.

I think the rule established by our Courts of Appeals goes too far. Every witness in a case might have made some contradictory statements out of court, and hence all would be entitled to show good reputation under that rule. The court can't try so many side issues in a case. Until the general reputation of a witness is attacked, no evidence to show his general reputation is admissible. Proof of contradictory statements is not an attack on general reputation.

The evidence offered by the plaintiff was properly excluded, although it would be competent under the

rule of our Courts of Appeals. This rule we do not approve, and those cases should not longer be followed.

VI. There are other errors urged, but the foregoing covers all that we find to have substance in them.

For the reasons expressed herein the judgment is reversed and the cause remanded. *Walker, Blair* and *Williams, JJ.,* concur; *Faris, J.,* concurs in the result; *Bond, C. J.,* dissents in separate opinion, refiling his divisional opinion; *Woodson, J.,* absent.

BOND, C. J. (dissenting).—Plaintiff, John P. Orris, instituted this action for personal injuries against the Chicago, Rock Island & Pacific Railway Company, to recover the sum of twenty thousand dollars damages, alleged to be due to the defendant's negligence in failing to provide "plaintiff with a reasonably safe locomotive engine" on which he was required to work; that on account of the defective condition of said locomotive, "live cinders and ignited pieces of coal struck the plaintiff in the left eye . . . and destroyed the sight thereof."

There was evidence tending to prove that on the morning of January 31, 1914, plaintiff, as fireman, with G. G. Hoffman, engineer, and Frank Nordyke, conductor, in charge of one of defendant's freight trains, left Trenton, Missouri, to make a run of one hundred and twenty miles to Horton, Kansas. About ten miles from Trenton, when they had reached what is known as the Jamesport Hill, plaintiff leaned out the left side of the engine in an effort to discover an automatic semaphore, a signal which indicates the safety of what railroad men call a "block;" that while he was in this position and looking upward toward the smoke-stack of the engine, a hot cinder struck him in the left eye. Plaintiff testified that this cinder was "from probably the size of a pea or maybe a large grape, in between there some place." The train reached Horton about six o'clock that evening and about ten-thirty or eleven o'clock that night plain-

tiff complained to Engineer Hoffman that his eye hurt him, and Hoffman then turned back the lid and removed something from the eye "with a toothpick; a black speck of some kind." They left Horton at five o'clock the next morning, reaching Trenton again just after noon, when plaintiff went to a doctor "who took some piece of cinder" out of his eye. The eye (to use plaintiff's words) "got very much inflamed, and got so it kind of shrunk away, and there was a scar or cut on my eye that seemed to be sinking in, as if the water in my eye was seeping out; it finally got so my eye was sunken in, same as though it was going to wilt away." Plaintiff finally went to Kansas City, where a doctor removed the left eye, as the right one was being sympathetically affected.

The engine on which plaintiff was firing was the usual type of freight engine, with fire-boxes at the rear. From this fire-box gas, flame, smoke and cinders pass through flues about two inches in diameter and six inches in circumference. The engine in question was equipped with 340 flues attached to what is termed a "flue sheet" and extended from the fire-box to the front of the engine or "smoke-box." The smoke, flames and cinders pass out of the flues at the front and strike a deflector plate and by suction are drawn toward the front of the smoke-box up through a netting or spark arrester and are then expelled through the smoke stack. This netting was of standard size, having a mesh of three-sixteenths of an inch. After the cinders reach the smoke-box, they are kept in constant motion by the exhaust of steam which forms a vacuum in the smoke-box, and this constant beating of the cinders against the netting crushes them into small bits. A spark arrester is primarily used as a precaution against the ignition of fires along the railroad right-of-way and adjoining property.

On cross-examination plaintiff's testimony tends to show that he had gotten cinders in his eyes at various times; that it was nothing unusual to get small cinders

in the eyes; that he usually went to a doctor to have them removed ''as he couldn't stand to have any one pick at'' his eyes; and that he did not examine the netting in the engine of which he was fireman. When asked if he knew the netting in question was burnt out, he said: ''No, but then that was defective, or had a large hole in order to let that cinder through.'' Again: ''You condemn the netting on your guess of the size of the cinder that hit you? A. Yes, sir. Q. That's the way you are going to condemn the netting? A. Yes, sir. Q. On the size of the cinder that hit you? A. Yes, sir, and knowing the cinder couldn't get through the netting if it was in proper order.''

When asked if he reported any defect in the engine when they reached Horton, Kansas, he replied that he told the ''engineer to report them (the flues). I didn't do it.''

''Q. So you made no report about the netting in the engine? No, sir.

''Q. You didn't report to him the netting was out of fix? Or did you? A. No, sir, for the reason, the roundhouse foreman had told him in my presence (i. e. that he had no men to do the work).

''Q. What did you tell him? A. I told him to report the flues stopped up.

''Q. And that was all you told him? That's all.''

G. G. Hoffman, the engineer who accompanied plaintiff to Horton, Kansas, and back, testified on cross-examination: ''I believe that the tearing of holes in the fire and clinkers does not have any effect in the amount or size of cinders, because the netting would entirely govern the size and possibly the number of cinders thrown out. The engine throws cinders all the time—everybody knows that—it is a usual and common occurrence. I did not notice anything ususual about throwing cinders on this trip. . . . I did not examine the netting in the head of this engine—did not have any reason to suppose that this netting was out of condition. They have inspectors to examine these nettings.

. . . Mr. Orris did not complain while on the road about his eye—but did complain in our room that night. He said he got a cinder in his eye. I turned back the lid over a match and brushed this particle off with a toothpick.''

At the close of plaintiff's evidence the defendant offered an instruction in the nature of a demurrer to the evidence, which was overruled.

The evidence for defendant tended to show that the choking up of the flues had nothing to do with the size of cinders expelled from the smoke-stack; that the engine in question had been thoroughly overhauled about six weeks previous to the occurrence in suit; that new netting was then put in and that netting of this sort usually remainded in good condition eight or nine months.

The following ''Reports of Inspection of Head Ends'' introduced in evidence by defendant show the condition of the netting at the time of the accident:

''Engine No. 2028, Arrived; date 1-28. Spark arrester condition on arrival, opened, no holes in netting; condition on departure, good . . . Reams, Inspector.

''Engine No. 2028, Arrived; date 1-30. Spark arrester condition on arrival, opened good. Repairs made, Condition on departure, good . . . Reams, Inspector.

''Engine No. 2028. Arrived; date 2-1. Spark arrester condition on arrival; opened, good. Repairs made, none. Condition on departure, good . . . Smith, Inspector.''

The trial resulted in a verdict and judgment for defendant, from which plaintiff appealed to this court.

I. Without stopping to inquire whether under the conceded facts there is any substantial evidence that the injury to the eye of the fireman from the emission of cinders through the smoke-stack of the locomotive was caused by the defective condition of the mesh of the spark arrester or resulted notwithstanding the mesh of the spark arrester was not out of repair and, therefore,

was a danger ordinarily incident to the performance of his duties, which he assumed when he engaged as a fireman, it is sufficient to say that this case was submitted to a jury whose verdict for defendant is not open to review unless caused by legal error in the rulings of the trial judge.

The only errors assigned by appellant are that the court erred in giving certain instructions for defendant and in excluding proffered testimony. These will be now ruled.

It is complained that the first instruction stated "that the mere fact" of injury to plaintiff and suit therefor "are of themselves no evidence of negligence of defendant, which should be shown by a preponderance of the credible evidence in the case," etc. There was no error in this direction. Injury and suit of themselves, or *per se,* do not warrant an inference of negligence in cases where the doctrine of *res ipsa loquitur* has no application. Such has been the uniform ruling of this court. [Blanton v. Dold, 109 Mo. l. c. 74.] In such cases the plaintiff must do three things in order to discharge the burden of proving the negligence charged. First, show an injury; second, negligence on the part of the defendant; and, third, a causal connection between the negligence and the injury. In taking these steps no inference of negligence arises from proof of the naked fact of injury, and if the plaintiff stops there no recovery can be had. But the plaintiff must go further and establish negligence from other facts and circumstances. Having done that and having also shown the *efficiency* of the negligence in causing the injury, a case is then (and not until then) made for the jury, who can then look to the extent of the injury and its probable effects as the measure of the compensation which they shall give. The instruction under review was not inconsistent with these principles. [Kane v. Railroad, 251 Mo. l. c. 27; Deschner v. Railroad, 200 Mo. l. c. 333; Warner v. Railroad, 178 Mo. l. c. 133; McFern v. Gardner, 121 Mo. App. 6; Pippin v.

*Character of Injury.*

Plummer Const. Co., 172 S. W. 1191; Yarnell v. Railroad, 113 Mo. 1. c. 580; Zeis v. Brew. Assn., 205 Mo. 1. c. 653.]

Neither was there anything to the contrary intended by the ruling of BROWN, C., in Walker v. Railroad, 178 S. W. 108, and Myers v. City of Independence, 189 S. W. 816. This distinctly appears from the concession of the learned commissioner that the bare fact of injury would not have any probative force on the issue as to negligence, but would be evidential on the final issue of the right to recover at all. Thus interpreted the language of the learned commissioner in the two cases cited is not inconsistent with the elementary principles stated above. We hold that there was no error in the instruction under review.

II. Appellant also complains of Instruction No. 2 given for defendant on the motion that it did not require the jury to "find . . . that the netting in use on the engine . . . was in usual and ordinary repair." This instruction defined assumption of risk, stating that it "included all the risks and dangers from cinders getting into his eye which ordinarily escape through the mesh or netting when in usual and ordinary repair," etc. The copulative terms "usual and ordinary" repair are not restricted to the practice of defendant alone, but include, within the scope of their meaning, the practice and custom of ordinarily prudent persons engaged in the same business. However, the undisputed fact given in the charge to the jury was that the mesh in use by defendant was three-sixteenths of an inch and of the standard in use by other railroads and adopted because reasonably safe. The single issue in this case was whether this mesh was out of repair or defective at the time of the accident, thereby causing a cinder larger than the apertures of the mesh, to hit the eye of plaintiff. The burden of proving that the mesh or netting was not in "usual and ordinary repair" was upon plain-

tiff; for absent evidence to that effect, no basis for a presumption of negligence existed. Until the advent of such evidence, defendant was not required to go further than its showing of the use of this engine of a mesh of standard size and reasonably safe. We think the criticism of this instruction is hypercritical and unsound.

III. It is next complained that the court erred in that by instruction number three for defendant, in so far as it informed the jury that the burden of proving the circumstances relied upon by him to establish that the mesh of the spark arrester was out of repair, was cast upon the plaintiff. We cannot sustain this contention. We think the evidence was circumstantial and hence this was not an improper direction. It is not pretended that any witness testified positively that there was any fault or imperfection or defect of any nature whatever in the spark arrester in use on this engine. The theory to that effect was based upon a concatenation of circumstances relied upon by plaintiff as the basis of a legitimate inference that the mesh had become defective when he was hurt. Hence it was entirely proper for the court to instruct the jury that it devolved upon him to prove those circumstances in order to make a case. The whole theory of plaintiff's case, as stated by himself, was that the cinder which struck his eye was larger than one which would ordinarily escape a mesh three-sixteenths of an inch in size; therefore, inferentially, that the mesh in question had become out of repair. [Haake v. Davis, 166 Mo. App. l. c. 253; Fink v. Railroad, 161 Mo. App. l. c. 327.]

*Burden of Proof.*

IV. We are unable to perceive the force of the objection to Instruction No. 4. It is claimed by appellant that the instruction in question was faulty in submitting the issue of the netting "suddenly becoming out of repair after the departure of the train." There was abundant evidence

*Narrowing Issues.*

for defendant that the admittedly standard-size netting had been shown by previous inspection to be in good condition and from an inspection in defendant's shops before the engine started on its trip. It was not, therefore, error in view of that evidence, to submit to the jury the issue of whether the injury to plaintiff was caused by the netting becoming suddenly out of repair after the beginning of the trip. This issue was legitimately raised by the pleadings and testimony and was the proper subject of a hypothesis in the instruction.

V. Appellant complains of instructions five and six; that one is argumentative and the other an abstraction. We do not discover any reversible error in either of them. Number five correctly told the jury Argumentative Instruction. that their findings should be based upon tangible evidence and reasonable and legitimate deductions and not upon mere speculation and conjecture. [Conner v. Railroad, 181 Mo. 397, 413; Giles v. Railroad, 169 Mo. App. 24; Glick v. Railroad, 57 Mo. App. 97.] Instruction numbered six, claimed to be a mere abstraction by appellant, has been often approved in this State. [Henry v. Railroad, 113 Mo. 535; Feary v. Street Ry. Co., 162 Mo. 75; Webb v. Baldwin, 165 Mo. App. l. c. 251.]

VI. The final complaint of appellant is that the court erred in excluding testimony offered by him to prove his good character. This assignment is not discussed in the learned brief for appellant, nor Abandoned Assignment. was it urged in oral argument, and we take it, therefore, has been abandoned.

The result is that the judgment in this case should be affirmed.