WESTERN    STATES    PORTLAND    CEMENT
COMPANY, Appellant, v. JOHN W. BRUCE,
Respondent.

Kansas City Court of Appeals, January 9, 1912.

1. **CONTRACTS: Counterclaims.** Plaintiff sued for cement sold
and delivered to defendant. The latter admitted the account
but filed a counterclaim alleging two contracts with plaintiff
for cement at stipulated prices and the breaches thereof. The
evidence adduced is found to be substantial enough to sustain
the verdict.

2. ———: **Practice, Appellate.** Appellate courts are not author-
ized to weigh evidence except for the single purpose of ascer-
taining whether or not the verdict is supported by substantial
evidence.

3. ———: **Damages.** Where a specified article is sold for use
for a particular purpose and that purpose is made known to the
seller, the latter is liable for such damages as the buyer suffered
in procuring other articles of the same kind for said purpose.

4. ———: ———: **Verdict.** A litigant will not, as a general rule,
be heard to complain, in the appellate court, that the verdict
rendered against him was not as large as it should have been.

Appeal from Buchanan Circuit Court.—*Hon. W. D.
Rusk*, Judge.

AFFIRMED (*conditionally*).

*T. H. Stanford* and *Eugene Silverman* for appel-
lant.

(1) The cause should not have been submitted to
the jury as to respondent's second counterclaim. His
evidence showed that he had not completed his con-
tract with the Hartman Bridge and Construction Com-
pany, and did not know how much had been delivered
to that company nor whether he would be called upon
to deliver the remainder. Under this state of the testi-
mony, there was nothing upon which to base a verdict,

and the testimony was so indefinite and uncertain as to require the exclusion of the second counterclaim from the consideration of the jury. Respondent's instruction No. 2 should therefore not have been given. (2) The motion for a new trial should have been sustained. The action is for breach of contract, and the measure of damages is definite and certain. If respondent was entitled to recover, he was entitled to recover just twice the amount allowed by the jury upon each counterclaim. This is evidence of misconduct on the part of the jury, which requires a setting aside of the verdict. "Where the law itself prescribes the rule of damages to which alone the plaintiff is entitled if he recover, a disregard of the law and an award of a sum not warranted by the rule is such evidence of passion or prejudice, or more frequently, of mistake or misapprehension, as will render it the duty of the court to set aside the verdict." Bayliss on New Trials and Appeals, page 505; Morris v. Railroad, 136 Mo. App. 398; Real Estate Company v. Investment Company, 150 Mo. App. 626; Cole v. Armour et al., 154 Mo. 333; Morris v. Railroad, 136 Mo. App. 398; Watson v. Harmon, 85 Mo. 447; Powers v. Gouraud, 44 N. Y. Supp. 249; McDonald v. Walter, 40 N. Y. 551.

*Mytton & Parkinson* for respondent.

(1) The motion for a new trial filed herein makes no objection that the recovery is inadequate, hence it is waived and cannot be urged on appeal. Cyc. of Law and Procedure, pp. 750, 751, pars. 11, 12; State ex rel. v. Bank, 144 Mo. 381; Elley v. Caldwell, 158 Mo. l. c. 376; Blanton v. Dold, 109 Mo. l. c. 69; Weese v. Brown, 102 Mo. 299; Turner v. Johnson, 95 Mo. l. c. 450. (2) An objection that the damages awarded by the jury are excessive or inadequate must be specifically alleged in the motion for a new trial. Cyc. of Law and Procedure, vol. 29, page 954, and cases cited. (3) An objection that the recovery is inadequate is

not raised by an assignment of error in the motion for a new trial that the verdict is contrary to the law and the testimony. Payne v. McLean, 44 Ill. App. 354. Or the verdict is against the evidence. Star Brewery v. Croake, 57 Ill. App. 287. Or that the verdict is against the evidence and the weight of the evidence.

JOHNSON, J.—Plaintiff, a corporation engaged in the business of manifacturing Portland cement at Independence, Kansas, brought this suit in the circuit court of Buchanan county against defendant, a dealer in cement at St. Joseph, to recover a balance alleged to be due on an account for cement sold and delivered to defendant. The answer of defendant consisted of a general denial and a plea of partial payment. In addition to the answer defendant filed a counterclaim in two counts. In the first count defendant alleges that in October, 1909, he and plaintiff entered into a contract wherein plaintiff sold and agreed to deliver 12,000 barrels of a specified brand of cement f. o. b. cars at St. Joseph at eighty cents per barrel, net, "said cement to be shipped as ordered it being further understood and agreed that the defendant herein should order said cement as it might be required by the Rackliffe & Gibson Construction Company for use by them in the work of paving St. Joseph avenue in the city of St. Joseph, Missouri, and that the defendant was to pay the plaintiff for the cement to be delivered under said contract at such time as he should receive payment for said cement from the Rackliffe & Gibson Construction Company." Further it is alleged that at various times plaintiff made shipments of cement on the orders of defendant in the aggregate amount of 1980 barrels; that plaintiff refused to ship the remainder of 10,020 barrels on the order of defendant thereby committing a breach of the contract and that at the time of said breach the market value of the cement had advanced to $1.28 per barrel. Judgment was

prayed for $4,809.60, the amount of the difference in value of 10,020 barrels at eighty cents and at $1.28 per barrel.

In the second count defendant alleges that in July, 1909, he and plaintiff entered into a contract by the terms of which plaintiff sold and agreed to deliver to defendant f. o. b. cars at St. Joseph, 3,000 barrels of cement at seventy-nine cents per barrel "said cement to be shipped as ordered, it being further understood and agreed that the defendant herein should order said cement as it might be required by the J. H. Hartman Bridge and Construction Company of St. Joseph, Missouri, for use by them in the work of building the Upper Whitehead main sewer in the city of St. Joseph, Missouri, and that the defendant was to pay the plaintiff for the cement to be delivered under said contract at such time as he should receive payment for said cement from the J. H. Hartman Bridge and Construction Company." Defendant claims plaintiff delivered 1750 barrels on the orders of defendant but refused to deliver the remainder of 1250 barrels at a time when the market value of the cement had increased to $1.28 per barrel. Judgment is prayed on this count for $612.50.

In the reply plaintiff admits that it entered into contracts with defendant for the sales of 12,000 and 3,000 barrels of cement respectively at the prices alleged in the counterclaim; that it delivered 1980 barrels on the first contract and 1750 barrels on the second and that it refused further performance of the contracts, but plaintiff denies that the contracts contained the terms of payment alleged in the counterclaim and alleges that defendant agreed to pay plaintiff "for each shipment of said cement so ordered by him within thirty days from the date of such shipment" and that "defendant made default in the performance of said contracts on his part in this, that he did not pay plaintiff for each shipment of said cement delivered to him."

At the trial it was agreed that defendant was entitled to a credit on the account sued upon, reducing its amount to $467 and defendant agreed that plaintiff should have judgment on the petition for that amount though defendant contended that the account was not due. This admission reduced the issues to those raised by the counterclaim and the reply, and throughout the trial the parties and the court treated the question of whether the terms of payment prescribed in the contracts were those alleged by plaintiff or were those stated by defendant as the paramount issue of fact to be solved by the jury.

The instructions given at the request of each party told the jury in effect to find for defendant on the counterclaim if they believed from the evidence the contracts provided that payment should not be made to plaintiff until defendant had been paid for the cement by his customers for whose benefit the contracts were made and, on the other hand, to find for plaintiff on the counterclaims if the jury believed that the contracts required defendant to pay for each shipment in thirty days from the date of the shipment. On the latter hypothesis the jury were instructed "that plaintiff had a right to cancel said orders and contracts and defendant is not entitled to recover upon his counterclaims or either of them and your verdict must be for plaintiff thereon."

In their verdict the jury found for plaintiff on the petition for $467 and for defendant on each count of the counterclaim. On the first the damages were assessed at $1900, and on the second at $240. Judgment was rendered in accordance with this verdict and plaintiff appealed.

The position of plaintiff thus is stated by its counsel: "Appellant makes three points only against the verdict in this case: First, that the verdict upon both counterclaims is against the great weight of the evidence, and is against the weight of the evidence to

such an extent that the trial court should have set the same aside, and this court should set the same aside. Second, that the evidence upon respondent's second counterclaim was of such character as to furnish nothing for submission to the jury, and as a result thereof, respondent's instruction No. 2 should not have been given to the jury; and, third, that this action being based upon contract with a definite and fixed measure of damages prescribed by the law, and the verdict having been for but half of the amounts to which respondent was entitled if the jury found that the contracts were made as alleged by him, the verdict shows that it was the result of passion, prejudice, sympathy or misapprehension, and must be set aside.'' We shall consider these points in the order of their statement.

One of the grounds of plaintiff's motion for a new trial was that the verdict was against the weight of the evidence and in overruling the motion the learned circuit judge evidently found that the verdict not only was supported by substantial evidence but by the weight of the evidence, since, if he had believed otherwise, it would have been his duty under the statute to grant a new trial. In law cases the rules in this state do not authorize an appellate court to weigh evidence except for the single purpose of ascertaining whether or not the verdict is supported by substantial evidence. Finding a verdict thus supported it becomes the duty of the appellate tribunal not to interfere with a judgment rendered thereon except for some prejudicial error of law committed against the appellant in the trial of the cause. Plaintiff recognizes this rule but insists that the verdict is not sustained by any substantial evidence.

We do not share this view of the evidence adduced by defendant. From his testimony it appears that for a number of years he had been a steady customer of plaintiff and had transacted his business at an office maintained by plaintiff in Kansas City. He supplied

.contractors with cement for use in public work for which they were paid in special taxbills and was compelled to wait for payment until they could realize money from the taxbills. He states that he had an agreement with plaintiff's manager at Kansas City that he should not be required to pay for cement he ordered for special jobs until his customers paid him, and there are many facts and circumstances that give color to his assertion and tend to show that he was regarded and treated by the Kansas City manager as a sort of distributing agent for plaintiff in St. Joseph. Defendant says the contracts in question were orally made at plaintiff's Kansas City office; that he told the manager the purchases were made for the purpose of filling orders he had accepted from the Rackliffe & Gibson Construction Company and the Hartman Bridge & Construction Company for cement to be used in public works and that he could not pay .for the cement until the contractors had paid him. Further he states that the manager agreed to sell him the cement on the terms he proposed. Defendant owed plaintiff at that time a large amount on account of other sales and his account with plaintiff shows that he had not paid for any shipment in thirty days after it was made. A number of letters written by plaintiff to defendant were introduced in evidence which strongly tend to contradict defendant's version of the transaction in controversy and of the character of the relationship plaintiff claims he sustained towards defendant. These letters uniformly spoke of defendant's account as being long past due and vigorously insisted upon the immediate reduction of the indebtedness, but defendant endeavors to explain these letters with the statement that plaintiff constantly was in pecuniary straits and that the manager of the Kansas City office was being prodded by the main office to raise money and that these dunning letters were written by the manager to satisfy the president that he

was doing all he could do to raise money and were not to be seriously taken by defendant. This explanation seems very weak but we may assume the letters were written in good faith and still find room in the evidence for a reasonable belief in the correctness of defendant's statement of the contracts. In addition to the facts to which we have referred it appears that after plaintiff refused to ship any more cement, basing its refusal on the failure of defendant to pay for shipments already made, defendant wrote plaintiff stating that if plaintiff would deliver the remainder of the cement it might attach the bills of lading to a sight draft for the full amount of the purchase price and of defendant's indebtedness and that defendant would pay the draft before receiving the shipment. The offer was not accepted and while it may be true that plaintiff was not bound to accept it if defendant had defaulted in the performance of the contracts the fact that plaintiff refused it, considered in the light of other facts and circumstances in evidence, not the least of which was the fact that the market value of cement had advanced more than fifty per cent, tends to induce the belief that plaintiff was seeking an excuse to renounce a bad bargain and that defendant may be right in his contention that he was not in default. We regard his evidence as substantial enough to raise the issue both parties submitted in the instructions asked by them and which plaintiff did not challenge by the offer of any instruction in the nature of a demurrer to the evidence.

Passing to the second point urged by plaintiff which relates entirely to the second count of the counterclaim, it appears that prior to the order given by defendant to plaintiff for the final shipment of 1250 barrels under that contract, the Hartman Construction Company had called on defendant for the delivery of that number of barrels. Defendant contends that the last mentioned order established the liability of de-

fendant to furnish that cement to the construction company and, therefore, fixed the measure of plaintiff's liability created by its breach of the contract pleaded in the second count. This contention was approved by the learned trial judge in the instructions given at the request of defendant and, in effect, the jury were directed, in the event they resolved the principal issue in favor of defendant, to allow damages on the basis of the difference in the contract price of 1250 barrels and their market value at the time of the breach. But defendant, in his testimony, conceded that at the time of the trial a material part of the 1250 barrels had not been delivered by him to the construction company and might not be required to be delivered. We quote from the testimony as follows:

"Q. Have you completed your contracts with the Hartman Bridge & Construction Company? A. No, sir; not yet. They have not finished the work. Q. You don't know whether they will order their cement do you, or not—the balance of it do you? A. Well, I don't know; just depends on how soon they will get to the work."

Counsel for plaintiff are right in their position that "since this is an action to recover damages upon the sale of a specified article for use for a particular purpose, which purpose was made known to the seller, the seller is liable, if at all, for such damages as the buyer suffered in procuring other articles of the same kind for said purpose." The fundamental rules in such cases are that the vendee should receive compensation for the actual loss suffered by him on account of the breach of the vendor and that he must make reasonable exertions to minimize his damages. If the construction company has not held defendant to full performance of his contract with that company and has released him, he has suffered no loss on account of plaintiff's default and to permit defendant to recover damages when he has sustained and will sus-

tain no loss would be to allow him more than compensatory damages. The evidence supports a reasonable inference that defendant has been released from a part of the obligation of his contract with the construction company and on that hypothesis the instructions relating to the second count authorize a greater recovery than defendant is entitled to.

The third proposition of plaintiff must be ruled in favor of defendant. The evidence of plaintiff shows that he was able to purchase the cement required to fill his contract with the Rackliffe & Gibson Construction Company at $1.18 per barrel, which was ten cents below the market price. The difference per barrel in the contract price and the price he was compelled to pay was thirty-eight cents, and on 10,020 barrels, this would amount to $3807.60. The verdict of $1900 returned on the first count was about fifty per cent of the full amount the jury might have assessed. The general rule is that a party will not be heard to complain in the appellate court that the verdict rendered against him was not as large as it should have been. [Alderman v. Cox, 74 Mo. 78; Gaty v. Sack, 19 Mo. App. 470; Harrison v. Murphy, 106 Mo. App. 465; Weisels v. Pemberton, 150 Mo. App. 626; Cole v. Armour, 154 Mo. 333.]

An exception to this rule is found in cases where the issue is contract or no contract and the contract asserted to be existent unalterably fixes the measure of liability. In such cases the action of the jury in returning an inadequate verdict is regarded as is said in Cole v. Armour, supra, "illogical, arbitrary and unjust. It is unjust to plaintiff because it is less than fifty cents on the dollar of the amount he was entitled to recover if he was entitled to recover anything and if the defendants were not liable for $12,229.34, then they were not liable in this action for any amount, and hence it is unjust to make them pay $6000. It is arbitrary because there is not a particle of evidence

in the case which supports it or even suggests such an amount. It is illogical, because upon the case as it was presented to the jury, the plaintiff was entitled to a verdict for $12,229.34 with interest, or else the defendants were entitled to a verdict. It is just as illogical and improper as a verdict for a plaintiff for fifty dollars, when the suit was upon a promissory note for one hundred dollars, and the defendant had pleaded simply *non est factum,* without any modifying or excusatory plea whatever.''

We think the case in hand does not fall under the exception but is within the general rule. The contract, by its terms, does not definitely and unalterably fix the *quantum* of damages recovered for its breach by the vendor. It does specify the quantity and price of the cement to be delivered by defendant but such vital issues as the market value at the time of the breach and the quantity and price of the cement defendant was compelled to purchase in the market are issues not determined by the contract but left open to judicial investigation and solution. In weighing the evidence on such issues the jury were required to exercise functions peculiar to that body and with which we have no right to interfere. We would not be warranted in holding as was held in the case of Cole v. Armour— a case belonging to an entirely different class—that the jury in not giving defendant all he asked, in effect, found against him on the main issue in the case and were actuated by the motive of deciding the case, not according to the rules of law given them in the instructions, but by their own conceptions of natural justice. Evidently the jury in this case acted within the scope of the sound judgment the law expected them to exercise in weighing the evidence submitted to them.

We deem prejudicial the error we have noted in the instructions relating to the second count and as that error infects the whole verdict returned on that count, we shall affirm the judgment only on condition

that a remittitur of $240 be filed by defendant within ten days from the filing of this opinion. It is so ordered. All concur.