STATE OF MISSOURI at the relation of HERMAN H. THYM, Relator, v. HOPKINS B. SHAIN, EWING C. BLAND and ROBERT M. REYNOLDS, Judges of the Kansas City Court of Appeals.—104 S. W. (2d) 237.

Division Two, April 21, 1937.

*Langworthy, Spencer, Terrell & Matz* for relator.

*Trusty & Pugh, Philip L. Levi* and *Guy W. Green, Jr.,* for respondents.

WESTHUES, C.—This is a certiorari proceeding, wherein relator seeks to quash the record and opinion of the Kansas City Court of Appeals in the case of Drake v. Thym, reported in 97 S. W. (2d) 128, on the theory that in the opinion the court construed certain evidence and declared a rule of law in conflict with controlling decisions of this court.

Drake, the plaintiff in that case, sued Thym to recover damages for personal injuries alleged to have been sustained as the result of a collision between a motorcycle, on which plaintiff was riding, and an automobile driven by the defendant. Drake obtained a judgment in the sum of $4000. On appeal the Court of Appeals affirmed the judgment and Thym instituted this proceeding to quash the opinion. The facts, as stated by the Court of Appeals, and the conclusion of the court on the point in question are found on pages 131 and 132 of 97 S. W. (2d), as follows:

"It is insisted that the court erred in admitting evidence of the good reputation of plaintiff's witness, Little, because his character was not impeached by the defendant.

930.

"The facts show that Little was a resident of Kansas City at the time of the collision but afterwards, and at the time of the·trial, he was in the City of New York where he resided; that, at the latter place, his deposition was taken by the plaintiff. In his depo-- sition Little testified, among other things, that he was driving his car south on the west side of Troost Avenue about 50 or 60 feet to the rear of defendant's car, which was going at the rate of about 25 to 30 miles per hour; that defendant suddenly turned to go into the garage without any warning being given and proceeded on to the point of the collision without diminishing his speed. Little also testified to other facts favorable to plaintiff's case.

"In his opening statement to the jury defendant's counsel stated that Little's deposition had been taken in New York; that although Little would testify that he saw the collision, as a matter of fact, he came into the garage 10 or 15 minutes after that event and asked the mechanics there 'if the street car company was involved in the accident;' that Little put a card in plaintiff's pocket and then left.

"Little, in his deposition, testified that after the collision he stopped his car on the west side of Troost Avenue, got out and as- sisted the defendant in carrying plaintiff into the garage where he first put his card in plaintiff's hand and then, afterwards, took it out of·his hand and· placed it in plaintiff's. pocket. Although Little, when his deposition was taken, was cross-examined at length on behalf of the defendant, he was not asked if he had made the re- mark about the street car company and he was not questioned about not seeing the collision.

"Defendant testified that he and some stranger carried plaintiff into the garage; that his impression was that the stranger was a middle-aged man; that plaintiff was unconscious; that afterward a man came into the garage, whom the witness thought was a young man, not a middle-aged man, and put a card in plaintiff's hand, then took it out of his hand and put it into plaintiff's pocket.

"Defendant's witness,· Gilkey, testified that he was employed in the garage; that defendant and another gentleman brought the boy into the garage on the night in question; that in about 10 or 15 minutes two gentlemen came into the garage together, and one of them, the younger of the two, put a card in plaintiff's pocket; that the man who put the card in plaintiff's pocket was not the man who helped carry him into the garage. Defendant sought to prove by this witness that the man who put the card in plaintiff's pocket was the man who asked if the street car company was involved in the accident. Plaintiff objected to the question and the objection was sustained.

. "In rebuttal, plaintiff put upon the stand, one Shackelford, who. was asked what was the general reputation of Little for honesty,; truth and veracity. Defendant objected to the question on the

ground that the character and reputation of the witness had not been attacked or put in issue. This objection was overruled and the witness answered: 'He was one of the most upstanding young men that I have known in a number of years.'

"It is claimed by the defendant that he did not, in any way, seek to impeach the reputation of the witness Little and that the testimony of Shackleford was merely for the purpose of bolstering up Little's testimony. In the beginning defendant objected to the witness, Shackleford, testifying because he was put upon the stand in rebuttal. Then counsel for plaintiff stated that he was putting Mr. Shackelford on the stand because Little's reputation had been attacked. The court stated that nobody had attacked Mr. Little's reputation but, after a discussion out of the presence of the jury, the court evidently changed his mind for the reason that he overruled the formal objection then made by counsel for defendant to the question concerning the reputation of Little.

"It is insisted by the defendant that the court ruled that the reputation of Little had not been attacked. This was the court's first ruling but, as before stated, he evidently changed his mind. The fact that the court, sometime prior to his ruling, stated that Mr. Little had not been attacked cannot be considered by us as material. [Griffith v. Kansas City Material & Construction Co., 46 Mo. App. 539.] We think there is no question but that the court properly overruled the objection to the question as to Little's reputation for honesty, truth and veracity, for the reason that, in the beginning counsel for defendant, in his opening statement, attacked it by stating to the jury, in effect, that Little was not at the place and did not see the collision but came into the garage 10 or 15 minutes afterwards and put a card in plaintiff's pocket, in other words, that the testimony of Little was a pure fabrication and that he was a perjurer. It may be that had the matter gone no further than this, it could not be said that Little's character was attacked in such a manner as to permit of sustaining evidence of his character. However, defendant proceeded to attempt to prove what was stated in the opening statement and the evidence that was got before the jury concerning the matter was greatly different than the charge made in the opening statement. The jury heard the opening statement and heard the testimony at the trial, the latter being to the effect that Little did not help carry the plaintiff into the garage and did not arrive at the scene until 10 or 15 minutes after the collision and then gave plaintiff his card. There is no question but that, under all of the circumstances, the jury understood what was meant by the testimony, that was, that the witnesses were charging Little with not having seen the collision at all.''

The court then continued a discussion of the question at some length, as will be noted on pages 132 and 133 of 97 S. W. (2d).

The applicable law and many cases are there reviewed illustrating the various situations when a witness's character has, or has not been placed in issue, by the evidence of an adverse party, so as to permit rebuttal evidence of good character. The court concluded that the general character of the witness, Little, had been sufficiently attacked to permit plaintiff to meet that evidence with evidence of good character.

We are of the opinion that the conclusion reached by the Court of Appeals was correct and in harmony with controlling decisions of this court. The evidence of the two witnesses was not contradictory to the evidence of witness, Little, but if true, then Little was not present when the accident occurred and was, therefore, a perjurer. It was an attack upon his general character. This court has ruled upon similar questions and held that such evidence amounted to an attack upon the witness's character, so as to permit evidence of good character to be introduced by the adverse party.

In the recent case of State v. Craft, 338 Mo. 831, 1. c. 845, 92 S. W. (2d) 626, 1. c. 633 (13), the Jones Exchange was robbed. At the time of the robbery one McMunn was in charge. He testified for the State at the trial of the alleged robbers. What occurred at the trial and our ruling on a question similar to that now before us can be best understood by the following quotation from the opinion:

"Over defendant's objections the court permitted the State, in rebuttal, to introduce testimony that McMunn's reputation for honesty and integrity was good. The witnesses did not testify as to his reputation for truth and veracity. That ruling of the court is assigned as error. Under the decisions of this court in State v. Speritus, 191 Mo. 24, 90 S. W. 459, State v. Jones, 191 Mo. 653, 90 S. W. 465, and State v. Corrigan, 262 Mo. 195, 171 S. W. 51, the admission of that evidence was justified. In the Speritus case, 191 Mo. 24, 1. c. 35, 90 S. W. 459, 462, a burglary and larceny case, the court said: 'We recognize the rule that evidence is not admissible to prove the good character of a witness or a party to a suit, unless it has in some way been assailed; and in the case in hand we think Vaughn's character was assailed when it was said he was a thief.' Vaughn had testified for the State, and the defendant had testified that Vaughn had stolen from him. The Speritus case was cited with approval in State v. Jones, supra, State v. Corrigan, supra, and State v. Richards (Mo.), 11 S. W. (2d) 1035. In the latter case, 11 S. W. (2d) 1035, 1. c. 1036, it is said: 'Proof that a witness has been convicted of a crime is such an impeachment as warrants the introduction of evidence to sustain his character or his reputation for truth and veracity.'

"In the case before us, defendant introduced evidence to prove that the alleged robbery was not a real robbery, but only a pretense, and that what really happened was the purloining of the

money of the Jones Brothers' Exchange through the connivance and co-operation of McMunn, which would make McMunn a party to the crime. That theory was stressed by defendant in the trial. We think that accusation brings the case within the holding in State v. Speritus, supra, and other cases above cited which followed it.''

In principle the cases are similar and it will be noted that in the Craft case previous decisions of this court were reviewed. Other cases by this court could be cited in harmony with the rule of law announced by the Court of Appeals. The Court of Appeals cited Section 1130, page 922 of 70 Corpus Juris in support of its ruling. The text supports the conclusion reached by the court, and in the footnotes cases from this court are cited.

Relator cited a number of cases by this court and contends that the opinion of the Court of Appeals is in conflict therewith. A number of the cases are: State v. Fogg, 206 Mo. 696, 105 S. W. 618; State v. Marshall, 317 Mo. 413, 297 S. W. 63, l. c. 68 (13); State v. Harlow, 327 Mo. 231, 37 S. W. (2d) 419, l. c. 421 (4, 5); State v. Jenkins, 327 Mo. 326, 37 S. W. (2d) 433, l. c. 435 (2); State v. Cropper, 327 Mo. 193, 36 S. W. (2d) 923, l. c. 928 (13). In each of the above cases the State made no attempt to attack the general character of the defendants on trial, except, of course, to prove that they were guilty of the offense charged. Their reputation for truth and veracity was not questioned. Examining the opinions in the above cases it will be found that this court merely held, that evidence of the defendant's reputation for truth and veracity as being good could not be introduced until it had been attacked by the State. This is in harmony with the general rule. [See 70 C. J. 788, sec. 981.]

The case of Orris v. Chicago, R. I. & P. Railroad Co. (court en banc), 279 Mo. 1, 214 S. W. 124, is strongly relied upon by relator. On pages 129 and 130 the question is there discussed at length. A careful reading of that opinion sustains the reasoning of the Court of Appeals. In discussing the question and holding certain opinions upon the point to be erroneous the court said:

''It occurs to us that some of the cases overlook a possible difference between things that go to the credibility of the witness rather than to his general reputation. When you attack his general reputation is one thing, but showing matters which affect the credibility of his statements on the witness stand is quite another and different thing. To show that a witness has made contrary statements out of court goes to the credibility of his evidence, but not necessarily to his general reputation for truth and veracity. There is a distinction between an attack upon the credibility of a witness's statement in court and an attack on his general reputation for truth and veracity. . . .

934

"So we conclude that neither the proof of mere contradictory statements nor a rigid cross-examination of the party will authorize the introduction of evidence as to his general reputation for truth and veracity. Such things go to the credit to be given his testimony rather than to his reputation for truth and veracity. These things do not constitute such an attack upon his general reputation as to admit evidence to support such reputation."

It will be noted that the court said:

"When you attack *his general reputation* is one thing, but showing matters which *affect the credibility of his statements on the witness stand* is quite another and different thing."

And so the impeaching evidence in this case did not affect the credibility of Little's statements on the witness stand as such, but it went further and tended to show that Little was not there and therefore his evidence was perjury. That, of course, is quite different than impeaching his evidence by prior contradictory statements, by showing that he was related to the plaintiff, or by any evidence which would merely tend to discredit his statements on the witness stand and not affect his general character.

We do not deem it necessary to discuss the other cases cited by relator. A number of them were referred to by the Court of Appeals. Other cases cited have been examined and we find that they do not announce any principle of law in conflict with the ruling of the Court of Appeals. In our opinion the conclusions of the Court of Appeals are in harmony with the Orris case, by the court en banc, and also in harmony with the opinion in the Craft case, supra, and the cases therein discussed.

It follows that our writ heretofore issued must be quashed. It is so ordered. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.