JOHN HUMPHRIES, APPELLANT, v. H. E. SHIPP, D./B./A. SHIPP LUMBER COMPANY, RESPONDENT.—194 S. W. (2d) 693.

Springfield Court of Appeals. May 17, 1946.

*Green & Green* for appellant.

*W. D. Roberts* and *A. W. Landis* for respondents.

988

FULBRIGHT, P. J.—Appellant and respondent will be referred to as plaintiff and defendant, respectively, as in the court below.

This is a suit in conversion instituted by plaintiff and in which defendant recovered of and from plaintiff the sum of $118.50 on his counterclaim and from which judgment plaintiff duly appeals.

The action was begun in Howell County Circuit Court, August 30, 1943, by the filing of a petition by plaintiff in which he alleged that in the summer of 1942 he was the owner of and in possession of certain lumber and building material at Ellis, Arkansas, and at that time defendant wrongfully converted same to his own use, to plaintiff's damage in the sum of $800. Defendant denied the conversion and filed a counterclaim alleging that plaintiff was indebted to him on open account in the amount of $171.50. Plaintiff replied denying that he was indebted to defendant on open account in any amount and as a part of his reply alleged that in July, 1942, defendant informed plaintiff that he, plaintiff, was indebted to him in the amount of about $50; that prior to such time plaintiff had a man working for him at Ellis, Arkansas; that he never authorized this man to purchase any lumber or supplies from defendant and if any were purchased plaintiff did not receive the benefit of same and was not legally responsible or liable on such account; that in order to avoid controversy he went to the office of the Shipp Lumber Company at West Plains where the agent of defendant then and there presented him with an account for $46.12, and plaintiff thereupon gave defendant's agent a check for said amount and received from the agent his receipt in full, dated July 8, 1942; that thereafter said check was returned to plaintiff uncashed.

Plaintiff's evidence tends to establish the material facts as alleged in his amended petition and refutes the contention that he was indebted to defendant on open account in any amount. The evidence of defendant, on the other hand, tends to establish the open account alleged in defendant's counterclaim and to show a balance due of $171.50 and that such account was for merchandise and building material, a part of which was purchased by a man in charge of plaintiff's cabins in Arkansas; that such building material went into the construction of plaintiff's cabins in Arkansas which were later torn down; that the lumber which defendant is alleged to have converted to his own use was from these torn down tourist cabins.

Such evidence as is necessary to dispose of the alleged errors will be set out in detail in the course of the opinion.

It is seriously urged that the trial court erred in refusing to permit the plaintiff, in rebuttal, to show his good reputation "as an honest, upright, law abiding citizen," and his "good reputation for truth and veracity," based upon the theory that defendant introduced evidence attempting to establish that the testimony of John Humphries, in regard to the receipt and check offered by plaintiff and received in evidence, was false and untrue; that plaintiff had committed perjury in so testifying and "that plaintiff had actually forged such purported receipt and forged the name of H. E. Shipp and Ed Brown thereon. Such testimony of witnesses for defendant was a direct

attack upon the general reputation of plaintiff which was thereby placed in issue.'' In support of this contention plaintiff relies upon the following cases: State ex rel. Thym v. Shain et al., 104 S. W. (2d) 237, 230 Mo. 927; Drake v. Thym, 97 S. W. (2d) 128, 231 Mo. App. 383; Orris v. Chicago R. I. & P. Ry. Co. (in banc), 279 Mo. 1, 214 S. W. 124, 70 C. J. 922.

In the Drake v. Thym case, *supra,* and the same case on *certiorari,* State ex rel. Thym v. Shain, *supra,* Drake had sued Thym for damages growing out of the collision of his motorcycle and defendant's automobile in Kansas City. In the statement of facts the court said: ''The facts show that Little was a resident of Kansas City at the time of the collision but afterwards, and at the time of the trial, he was in the city of New York where he resided; that, at the latter place, his deposition was taken by the plaintiff. In his deposition Little testified, among other things, that he was driving his car south on the west side of Troost Avenue about fifty or sixty feet to the rear of defendant's car, which was going at the rate of about twenty-five or thirty miles per hour; that defendant suddenly turned to go into the garage without any warning being given and proceeded on to the point of the collision without diminishing his speed. Little also testified to other facts favorable to plaintiff's case.

''In his opening statement to the jury defendant's counsel stated that Little's deposition had been taken in New York; that although Little would testify that he saw the collision, as a matter of fact, he came into the garage ten or fifteen minutes after that event and asked the mechanic there if the street car company was involved in the accident; that Little put a card in plaintiff's pocket and then left. Little, in his deposition, testified that after the collision he stopped his car on the west side of Troost Avenue, got out and assisted the defendant in carrying plaintiff into the garage where he first put his card in plaintiff's hand and then, afterwards took it out of his hand and placed it in plaintiff's pocket. Although Little, when his deposition was taken, was cross-examined at length on behalf of the defendant, he was not asked if he had made the remark about the street car company and he was not questioned about not seeing the collision.

''Defendant testified that he and some stranger carried plaintiff into the garage; that his impression was that the stranger was a middle-aged man; that plaintiff was unconscious; that afterward a man came into the garage, whom the witness thought was a young man, not a middle-aged man, and put a card in plaintiff's hand, then took it out of his hand and put it into plaintiff's pocket.

''Defendant's witness, Gilkey, testified that he was employed in the garage; that defendant and another gentleman brought the boy into the garage on the night in question; that in about ten or fifteen

minutes two gentlemen came into the garage together and one of them, the younger of the two, put a card in plaintiff's pocket; that the man who put the card in plaintiff's pocket was not the man who helped carry him into the garage. Defendant sought to prove by his witness that the man who put the card in plaintiff's pocket was the man who asked if the street car company was involved in the accident. Plaintiff objected to the question and the objection was sustained.

"In rebuttal, plaintiff put upon the stand one Shackelford who was asked what was the general reputation of Little for honesty, truth and veracity. Defendant objected to the question on the ground that the character and reputation of the witness had not been attacked or put in issue. This objection was overruled and the witness answered: 'He was one of the most upstanding young men that I have known in a number of years.'

". . . We think there is no question but that the court properly overruled the objection to the question as to Little's reputation for honesty, truth and veracity, for the reason that, *in the beginning counsel for defendant, in his opening statement, attacked it by stating to the jury, in effect, that Little was not at the place and did not see the collision but came into the garage ten or fifteen minutes afterwards and put a card in plaintiff's pocket; in other words, that the testimony of Little was a pure fabrication and that he was a perjurer.* (Italics ours.) It may be that had the matter gone no further than this, it could not be said that Little's character was attacked in such a manner as to permit of sustaining evidence of his character. However, defendant proceeded to attempt to prove what was stated in the opening statement and the evidence that was before the jury concerning the matter was not greatly different than the charge made in the opening statement. The jury heard the opening statement and heard the testimony at the trial, the latter being to the effect that Little did not help carry the plaintiff into the garage and did not arrive at the scene until ten or fifteen minutes after the collision and then gave plaintiff his card. There is no question but that, under all of the circumstances, the jury understood what was meant by the testimony, that was, that the witnesses were charging Little with not having seen the collision at all."

As additional reasons why it was competent to offer sustaining evidence as to the good character of Witness Little in the Thym case, the court said:

"It will be borne in mind that Little was a resident of a distant state and when his deposition was taken he was not asked, on cross-examination, whether he did not come upon the scene of the collision ten or fifteen minutes after the collision and give his card to the plaintiff and he was not otherwise questioned concerning his not

being there. Little being in New York at the time of the trial, there was no opportunity given for plaintiff to examine Little upon the subject of these charges against the witness. Plaintiff was deprived of the opportunity of having the jury judge of Little's credibility by seeing him on the witness stand. Under all of the circumstances, we do not think that the court abused its discretion in permitting the question propounded to Shackleford touching the general reputation of Little for truth and veracity. [70 C. J., pp. 922, 923.]''

In the case at bar plaintiff attempted to show that defendant had rendered him a statement for a lesser amount than alleged in his (defendant's) counterclaim and testified to at the trial. Plaintiff testified that Ed Brown, while an employee of defendant and previous to the filing of the suit, had presented plaintiff with a bill for $46.12; that plaintiff wrote and delivered to Brown a check in that amount and that Brown wrote a receipt for the amount of the statement showing the account paid in full. A little later, that afternoon or the next day, Brown returned the check to plaintiff, without having cashed same, and stated that Mr. Shipp had changed his mind; that the account was more than the amount of the check. Plaintiff further testified, in substance, that all the writing on the check was his own and that all the writing on the receipt was Brown's. It will be observed here that plaintiff had previously given a deposition in which his testimony was substantially at variance with his testimony at the trial, especially with respect to the check and receipt. On cross-examination it was developed that the following questions and answers appeared in plaintiff's deposition:

''Q. Were you indebted to Mr. Shipp? A. He presented me with a bill for a certain amount and I paid it.

''Q. When did you pay it? A. I don't remember the date.

''Q. Do you have a check or anything to refresh your memory on that? A. I think I could find the check.

''Q. Do you know how much he presented you a bill for? A. Yes, $41.12. That was his bill that he presented me and gave me a receipt for marked paid in full.

''Q. Who signed the receipt? A. H. E. Shipp.

''Q. And you paid this to Mr. Shipp in person? A. Down here at the lumber yard.

''Q. To Mr. Shipp? A. To Mr. Shipp and the boy that worked down there.''

On the trial of the case plaintiff was asked the following questions and made the following answers:

''Q. When did you decide it was Brown you paid this to instead of Shipp? A. I knew all the time it was Brown.

''Q. Why, when you gave your deposition, did you say it was Shipp? A. I might not have understood the question.

"Q. Did you misunderstand all those questions? A. I might have."

Again, in the deposition, he was asked:

"Q. Who was present? A. Mr. Shipp and the boy. I don't know, it was a Brown boy I guess.

"Q. What Brown boy was that? A. I think it was Seth Brown's boy, Ed Brown, I believe his name was."

During the trial of the case and on cross-examination plaintiff was asked the following question:

"Q. Was Mr. Shipp and the Brown boy down there? A. No, the boy was there and some woman."

And on direct examination of plaintiff:

"Q. They have asked you about this check if it was post-dated. Was it given the day the receipt was given to you? A. It was given the day it was receipted here. The 8th day of July, 1942."

Defendant called as a witness Marvin Johnson who was Cashier of the West Plains Bank and qualified as an expert in handwriting. He was handed plaintiff's exhibits, the check and the receipt, and was asked the following question and gave the following answer:

"Q. State whether or not in your opinion the same man wrote both of those? A. In my opinion they are the same writing."

On cross-examination plaintiff's counsel brought out from defendant Shipp that to the best of his knowledge he did not believe the signature on the receipt was Brown's. Subsequently, plaintiff was recalled to the witness stand and asked that he then recalled that Brown did write both the check and the receipt and that he, Humphries, merely signed the check; that he had not intended to testify that he made out the check and didn't recall that he had so testified the previous day.

Dorothy Hopcroft, a former employee of defendant and testifying in his behalf, stated she was in charge of the office of the Shipp Lumber Company in West Plains in July, 1942, when John Humphries came there; that Ed Brown was not there at the time; that no one had any authority at the office other than the witness and Mr. and Mrs. Shipp; that she looked up plaintiff's account in the company books and found it to be $46.12; that Humphries wanted to give her a post-dated check for that amount and wanted a receipt therefor; that she refused to take his check or give him a receipt and that Humphries was never down there after that time. On being handed the check in question witness stated that she had never seen it before.

Thereafter plaintiff offered in rebuttal the testimony of three different witnesses to show the good reputation of plaintiff as an honest, upright citizen, also of his general good reputation for truth and veracity, which testimony, upon objection, was rejected. Plaintiff contends that in rejecting this testimony the court committed reversible error.

A careful reading of the evidence in the Thym case and the evidence in the case at bar shows that the reasons given by the court in the Thym case for sustaining the trial court's action ·in overruling the objection to the offer of evidence as to the good reputation of Witness Little, are not reasons which would be applicable here and, therefore, in no way controlling or decisive of this case. It is our conclusion that such testimony in the instant case was properly excluded for the reason that plaintiff's reputation has an honest, upright, and law abiding citizen and for truth and veracity was not attacked in such a way as would, in contemplation of law, warrant the court in admitting testimony as to his good reputation. [Orris v. Chicago R. I. & P. Ry. Co., *supra*.]

The situation in the case at bar is entirely different to the Thym case. As defendant says, the evidence which opened the way for reputation testimony in the Thym case was not only contradictory to the testimony of the witness but was presented in an effort to show that the entire testimony of the witness was fictitious. The witness had testified by deposition describing an automobile accident and in the opening statement the attorney for defendant made the charge, in substance, that witness was not present when the accident happened, and in the course of the trial offered evidence to substantiate that charge. Both the Kansas City Court of Appeals and the Supreme Court (Drake v. Thym, *supra,* and State ex rel. Thym v. Shain et al., *supra*) refused to interfere with this exercise of ·discretion by the trial court, holding that the defendant had gone beyond mere proof that the witness had not testified truthfully and charged, and attempted to prove, that the entire testimony of this witness was a "pure fabrication."

On the other hand, although plaintiff, in the instant case, was subjected to a grueling cross-examination in which he made damaging admissions and defendant's evidence sharply contradicted that of plaintiff, it merely tended to disprove plaintiff's testimony and was not an attack upon his reputation. [Orris v. Chicago R. I. & P. Ry. Co., *supra*.]

The Orris case quoted with approval the following from the case of Gutzwiller v. Lackman, 23 Mo. 168, loc. cit. 172:

" 'The·rule is stated in the books that, as evidence is to be confined to the points in issue, the character of either party cannot be inquired into in a civil suit, unless it is put in issue by the nature of the proceeding itself.' This rule has been consistently followed by this court. [Rogers et al. v. Troost's Adm'r., 51 Mo. loc. cit. 476; Dudley v. McCluer, 65 Mo. lot. cit. 243, 27 Am. Rep. 273; Vawter v. Hultz, 112 Mo. loc. cit. 639, 20 S. W. 689; Black v. Epstein, 221 Mo. loc. cit. 305, 120 S. W. 754; Bank v. Richmond, 235·Mo. loc. cit. 532, 139 S.·W. 352.]

"We have also expressly ruled that sharp conflict in the testimony of witnesses will not authorize the introduction of evidence as to good character. [Stàte v. Fogg, 206 Mo. loc. cit. 716, 105 S. W. 618, . . . ]"

The Orris case further says:

"It occurs to us that some of the cases overlook a possible difference between things that go to the credibility of the witness rather than to his general reputation. When you attack his general reputation is one thing, but showing matters which affect the credibility of his statements on the witness stand is quite another and different thing. To show that a witness has made a contrary statement out of court goes to the credibility of his evidence, but not necessarily to his general reputation for truth and veracity. There is a distinction between an attack upon the credibility of a witness' statement in court and an attack on his general reputation for truth and veracity.

"So we conclude that neither the proof of mere contradictory statements nor a rigid cross-examination of the party will authorize the introduction of evidence as to his general reputation for truth and veracity. Such things go to the credit to be given his testimony rather than to his reputation for truth and veracity. These things do not constitute such an attack upon his general reputation as to admit evidence to support such reputation."

As we read the Orris case and the decisions cited with approval therein we have come to the conclusion that the trial court cannot be convicted of error in rejecting the character evidence in question in the case at bar. There is nothing in the record to indicate that defendant's motive was to impute to plaintiff the crime of perjury or forgery. The situation is not unlike practically any case where the testimony of a witness or party to a suit is contradicted.

In the case of Humphreys v. St. Louis-San Francisco Ry. Co., 286 S. W. 738, the court said: "The fact that defendant's evidence was of a character which tended to show that plaintiff had violated the law did not put his character in issue in such a way as to furnish a legal ground for the introduction of evidence of his good reputation." [See Lowe v. Montgomery et al. (in banc), 321 Mo. 330, 11 S. W. (2d) 41.]

Plaintiff contends that the court erred in giving defendant's Instruction B and levels his complaint at the following language contained therein: ". . . and defendant would not be liable for any of such lumber and building materials which may have been taken by any person or persons not so authorized by him."

Under certain circumstances plaintiff's criticism would be well taken, but not here, since plaintiff's Instruction No. One required the jury to find that the material from certain torn down cabins was taken by defendant's "agent and servant acting within the scope

of his employment," thereby inviting defendant's Instruction B. Both parties having asked and received instructions upon that theory, neither can now complain. [Cantley v. Plattner, 67 S. W. (2d) 125, 228 Mo. App. 411.]

If we assume, as plaintiff contends, that defendant, in his answer, pleaded that he attached the building material in question belonging to plaintiff, John Humphries, that a judgment was rendered in defendant's favor on attachment, that the officer sold such material under the judgment and that defendant bid it in, it would not inure to plaintiff's benefit since that issue was abandoned, in that defendant made no request that such defense be submitted to the jury. Plaintiff predicated his right of recovery on an instruction to the jury based solely on the theory that the materials were taken by the agents and servants of defendant while acting within the scope of their employment. Having submitted his case to the jury on one theory the appellate court will not determine whether he might have recovered on another. [Wiener v. Mutual Life Ins. Co., 170 S. W. (2d) 174, 179 S. W. (2d) 39, 352 Mo. 673, and cases there cited.] It therefore follows that the objection of the plaintiff to defendant's Instruction B must be ruled against him.

Plaintiff further insists that ". . . the verdict and judgment against him for $118 cannot stand, as there was no evidence to support the verdict; . . . defendant was entitled to a recovery on his counterclaim in the sum of either $171, $158 or nothing and it is our contention that there was no evidence to support the verdict for $118."

"The general rule is that a party will not be heard to complain in the appellate court that the verdict rendered against him was not as large as it should have been. [Cement Co. v. Bruce, 160 Mo. App., loc. cit. 255, 142 S. W. 783.] As we observed in that decision, an exception to this rule is found in cases where the issue is contract or no contract and the alleged contract unalterably fixes the measure of liability." [Blakely v. Miller, 167 S. W. 1136, loc. cit. 1137, 180 Mo. App. 389; Coyne v. Golland, 243 S. W. 376; Taylor v. Aetna Life Ins. Co., 154 S. W. (2d) 421.]

It is obvious that the issue here does not fall within the exception to the general rule as above quoted. Hence, the authorities cited by plaintiff are not in point. The case of Bigham v. Schneider, 157 S. W. (2d) 547, was based on an expressed contract, as was the case of Cole v. Armour, 154 Mo. 333, 55 S. W. 476; Shoemaker v. Johnson, 204 S. W. 962, and Weisels v. Investment Co., 150 Mo. App. 626, 131 S. W. 353, and other cases cited by plaintiff all fall under the exception to the general rule. In the instant case the claim alleged in the counterclaim was unliquidated and based upon an open, running account. In this situation the general rule rather than the exception applies.

Complaint is also made that the jury did not make a special finding in its verdict for plaintiff on his cause of action and contends that if the jury did determine the amount due plaintiff and allowed it as a credit on account of defendant's counterclaim, the verdict and judgment thereon should not stand because not responsive to the pleadings and the evidence. The case of Diamond v. McVey, 239 S. W. 562, is cited in support thereof, wherein the court held that the verdict, which was a general finding for the defendant, was responsive to the pleadings. The pleadings in that case were somewhat different to the pleadings in the instant case. As there stated, the general rule is, in cases of this character, that the verdict, in order to be responsive to the issues, must make a finding on the cause of action under the allegations of the petition, and also on the counterclaim. [See Brandtjen & Kluge v. Hunter, 145 S. W. (2d) 1009.] Defendant's counterclaim is based upon an open account in the sum of $171.50. In plaintiff's reply he denied that he was indebted to defendant in any amount on open account. The evidence shows various charges made by defendant against plaintiff for materials bought, and various credits given thereon, showing an unliquidated claim. Defendant alleged in his answer that he gave plaintiff credit on his account for the lumber, etc., that he had received belonging to plaintiff in the sum of $35 and so testified in the trial. He also testified as to cash credits, all of which was brought out by plaintiff on cross-examination of defendant. The issue as to credits was submitted to the jury by an instruction given by the court without objection, such instruction being as follows:

"The Court instructs the jury that if you find and believe from the evidence in this case that at the times mentioned in evidence the defendant sold and delivered to plaintiff certain goods, merchandise and building material at the special instance and request of plaintiff, or if you find that defendant delivered goods, merchandise and building material to plaintiff at the special instance and request of plaintiff's agent or servant acting within the scope of the authority as such agent or servant, or if you find and believe from the evidence that defendant delivered merchandise to plaintiff at the special instance of plaintiff's agents or servants, and if you find that plaintiff after learning that said merchandise had been delivered, retained said merchandise and received the benefits therefrom and promised to pay for same, then in either of such events, if you so find the facts to be, you will find your verdict for the defendant on his counterclaim for the reasonable value of such merchandise, less any credits to which plaintiff may be entitled by reason of payments thereon, either by cash or by merchandise which was returned to plaintiff."

We think it is reasonable to infer that the jury followed this instruction in arriving at a verdict and deducted whatever they may

have found plaintiff was entitled to as credits, from defendant's counterclaim. Even though the verdict may be technically erroneous, nevertheless we do not deem it of such gravity as to warrant a reversal of the case. "No appellate court shall reverse any judgment unless it believes that error was committed by the trial court against the appelland, and materially affecting the merits of the case." [Sub-section (b), Section 140, p. 395, Laws of Mo., 1943.]

It is urged that the court erred in rejecting evidence as to the solvency of plaintiff. All the evidence tending to establish insolvency of plaintiff was injected into the case by plaintiff on the cross-examination of the defendant. Having injected, or attempted to inject this issue into the case plaintiff was not in a position to offer proof of his solvency.

Other errors are charged in the admission of evidence but we do not deem them of sufficient importance to require further consideration here.

We have carefully examined the entire record and have found no reversible error. The judgment of the trial court is accordingly affirmed.

*Blair* and *Vandeventer, JJ.*, concur.