[1] Action for unlawful detainer. Plaintiffs are the owners of an apartment building consisting of six three-room apartments and one two-room apartment. Since sometime in December, 1947, defendant has occupied one of the three-room apartments as a tenant of plaintiffs, and has paid a rental of $8 per week. The rent was paid each Saturday. There was no rental contract in writing. Plaintiffs and their son, Edward Cieslinski, occupied a three-room apartment adjoining that occupied by defendant.
[2] On June 24, 1948, plaintiffs served defendant with a written notice to vacate the apartment he occupied on August 28, 1948. This notice was intended to be the 60-day notice required by the Federal Housing and Rent Control Act of 1947, as amended in 1948, 50 U.S.C.A.Appendix, § 1881 et seq., which provides that no action or proceeding to recover possession of any controlled housing accommodations coming under the Act shall be maintainable by any landlord against any tenant in any court, notwithstanding that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled, unless the landlord seeks in good faith to recover possession of such housing accommodations for his immediate and personal use and occupancy as housing accommodations, or for the immediate and personal use and occupancy as housing accommodations by a member or members of his immediate family.
[3] Thereafter, on July 24, 1948, plaintiffs served defendant with another written notice to vacate the apartment he occupied on August 28, 1948. This notice was intended to be the one month's notice required by Section 2971, R.S. 1939, Mo.R. S.A., as a basis for the unlawful detainer action under the second clause of Section 2833, R.S. 1939, Mo.R.S.A.
[4] Both notices to vacate contained the statement, "The landlords seek in good faith to recover possession of such housing accommodations for their immediate and personal use and occupancy as housing accommodations and for the immediate and personal use and occupancy as housing accommodations of their son Edward Cieslinski, a member of their immediate family."
[5] The case reached the circuit court on appeal from the magistrate court. Being tried in the circuit court before the judge and a jury, a verdict was given by the jury finding the defendant not guilty of unlawful detainer. The case comes to this court on plaintiffs' appeal from the judgment of the circuit court entered pursuant to such verdict.
[6] The evidence was undisputed that Clark had occupied the apartment since December, 1947, without any contract in writing and had paid a rental of $8 a week, such rental having been regularly paid each Saturday. Under such showing defendant was a tenant from month to month by virtue of Section 2971, R.S. 1939, Mo. R.S.A. Plaintiffs had a right under the state law to terminate such tenancy by giving the tenant one month's notice to vacate. The notice must be given on or before the rent paying date and at least sixty days (Federal law) or one month (state law) before the day the tenant is ordered to vacate. Berner v. Gebhardt, 87 Mo.App. 409. Where the rent is paid each Saturday as in this case, the landlord may treat any Saturday as the beginning of a new month's rental, and give his notice(s) accordingly. This was concededly done in this instance. Therefore, the defendant had no defense under the state law to an action for unlawful detainer after August 28, 1948. However, he did have a defense under the Federal law, to wit, that it devolved upon plaintiffs to show that they *Page 142 
required the property for their own use or for the use of a member of their immediate family. And, in order to prove plaintiffs' case as to their good faith in attempting to terminate Clark's tenancy, Stella Cieslinski testified on direct examination, cross-examination and redirect examination that she and her husband did not need or desire the Clark apartment for their own use but wanted it for the use of their son, Edward. Then after a court recess she was again called for further redirect examination, and then testified that she and her husband wanted the Clark apartment for their joint occupancy with their son, Edward, by cutting a doorway between the two apartments, but that they found the expense would be too great and abandoned that plan, and then wanted the Clark apartment for the use of their son, Edward, and his prospective wife. Edward testified that he became engaged to marry in May or June, 1947, but was not financially able to marry until March or April, 1948, and did not ask his mother for an apartment until May 15 or 16, 1948.
[7] During the examination of Edward Cieslinski the trial judge asked him several questions as to the work he was engaged in and as to his financial condition, and that is now alleged as error. Edward had testified that he became engaged to be married about May 15, 1947, but being financially unable to marry at that time he did not ask his mother for an apartment until May, 1948. The question at issue was whether plaintiffs were in good faith in seeking to have defendant vacate the apartment he was occupying. On this issue plaintiffs sought to show that their son, Edward, was planning on marriage, and that he being a member of their immediate family, the Federal Housing and Rent Control Act permitted them to require Clark to vacate. Certainly on that issue an examination of Edward as to his marriage plans and financial ability were material and proper inquiries on the question of the good faith of the plaintiffs. However, appellants made no objection whatever to the court's questions, and hence would in any event have no right to complain now.
[8] Appellants further allege error in that the trial court refused to sustain plaintiffs' motion for a directed verdict. A directed verdict for a plaintiff cannot be given where there is an issuable fact in the case. In this case the very question at issue and to be resolved by the jury was whether plaintiffs were in good faith in seeking the Clark apartment for their own use or for the use of an immediate member of their family. That depended upon the oral testimony, and the jury were the sole judges of the credibility of the witnesses and the weight and value to be attached to their testimony.
[9] The burden was on the plaintiffs to prove their good faith. It was for the jury to determine whether plaintiffs did meet this burden of proof. As stated in the case of State ex rel. Strohfeld v. Cox, 325 Mo. 901, 30 S.W.2d 462, loc. cit. 465, "The rule may be stated in this way: Where a party asserts the affirmative of a proposition and proof of it is necessary to sustain his point, the truth and weight of his evidence, though uncontradicted, is for the jury." And in the case of Cluck v. Abe, 328 Mo. 81,40 S.W.2d 558, loc. cit. 559, it was held, "The court has no right to tell the jury that it must believe the witnesses. The jury, in the first instance, is the sole judge of the credibility of the witnesses and of the weight and value of their evidence, and may believe or disbelieve the testimony of any one or all of the witnesses, though such evidence be uncontradicted and unimpeached." It is therefore the established rule that where a party asserts the affirmative of a proposition and proof of it is necessary to sustain his point the truth and weight of his evidence though uncontradicted is for the jury. State ex rel. Strohfeld v. Cox, supra; Cluck v. Abe, supra; Wiener v. Mutual Life Ins. Co. of New York, 352 Mo. 673, 179 S.W.2d 39. The case of Beery v. Hoelzel, Mo.App., 171 S.W.2d 741, relied upon by appellants, was an appeal by the defendant from an adverse judgment, where the rule is different. See Connole v. East St. Louis Suburban R. Co., 340 Mo. 690, 102 S.W.2d 581, loc. cit. 586. Not *Page 143 
only so, but the case was long before the Federal Housing and Rent Control Act, and there was no disputed question of fact in the case. It has long been the rule as held in that case that where plaintiff's proof is documentary or undisputed the trial court may direct a verdict for the plaintiff. That is not this case. The refusal to direct a judgment for plaintiffs was proper.
[10] Defendant's instruction No. 3 copied verbatim the first clause of Section 2833, R.S. 1939, Mo.R.S.A., defining unlawful detainer "When any person shall willfully and without force hold over any lands, tenements or other possessions, after the termination of the time for which they were demised or let to him," etc. Not only is it improper to quote the statutory law to the jury in the instructions and leave it to them to determine whether the statute has been followed, but in this case the first clause above quoted of the definition of unlawful detainer had no application whatever to the case. In this case plaintiffs did not seek possession because defendant was holding over after the termination of the time the premises were let to him, but were seeking possession by reason of defendant's refusing to vacate after demand in writing. However, plaintiffs' instruction No. 1 contained the same error, and required a finding by the jury "that the defendant willfully, and without force held the possession of said premises after the termination of the time for which they were let to him." It has long been the rule that where both parties ask and receive instructions upon the same theory, even though it be erroneous, neither can afterwards complain on appeal. Johnson v. Hurch Delivery Service, 351 Mo. 73, 171 S.W.2d 656; Cantley v. Plattner, 228 Mo.App. 411, 67 S.W.2d 125; Humphries v. Shipp, 238 Mo.App. 985, 194 S.W.2d 693.
[11] Appellants claim that there is conflict between plaintiffs' instruction No. 2 and defendant's instruction No. 3, in that plaintiffs' said instruction told the jury "that it has been admitted that the relation of landlord and tenant existed between plaintiffs and defendant and that the defendant was duly served with the sixty day and thirty day notice to vacate according to law," whereas defendant's instruction No. 3 told the jury that "if you find and believe from the evidence that the plaintiffs did not comply with the provisions of the State Law and the Federal Law and both of them, your verdict must be for the defendant." On the theory on which the case was tried by both parties the jury could not have been misled or confused by the wording of these two instructions. The only contested issue in the case was plaintiffs' good faith in terminating the tenancy. Under instruction No. 2 the jury would be compelled to find that notices to vacate were given according to law, but they might find under instruction No. 3 that such notices were insufficient because not given in good faith. The instructions were not properly worded, but they were not misleading or prejudicial where it was clear to the jury from the instructions as a whole that the only real issue in the case was the good faith of plaintiffs. We should not reverse the judgment unless we find and believe that error was committed by the trial court against the appellants, and materially affecting the merits of the action. Section 140(b), Civil Code of Missouri, Mo.R.S.A. § 847, 140(b).
[12] Defendant's instruction No. 4 defines "good faith" as meaning "that in truth and in fact plaintiffs intended to secure possession for the reason stated in their notices and pleadings." We can see no merit in the criticism of such definition. As hereinabove held, the jury were not bound to accept the testimony of Stella Cieslinski and her son, Edward, as true. Their credibility and the weight and value of their testimony on the question of plaintiffs' good faith was for the jury to determine.
[13] Defendant's instruction No. 5 defined a family as "a collective body of persons who live in one home, under one head or management." This is the ordinary meaning of the word "family". There was no dispute in this case whatever that Edward *Page 144 
Cieslinski had lived with his mother and father for many years, and was a member of their family. The instruction was in no event harmful to plaintiffs.
[14] The judgment of the circuit court should be affirmed. It is so ordered.
[15] ANDERSON, P. J. and McCULLEN, J., concur.